**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH ALICEA**, **MICHELLE URRUTIA**, **KATINA RAMOS**, and **JACK ARTINIAN**, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 18 cv 5381 |
| **COUNTY OF COOK**, and **THOMAS J. DART**, individually, and in his official capacity as Sheriff of Cook County, | ) ) ) ) | |
| Defendants. | ) ) | Jury Trial Demanded |

# CLASS ACTION COMPLAINT

**FOR VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS
AND INVASION OF PRIVACY**

Thomas A. Zimmerman, Jr.
Sharon A. Harris
Matthew C. De Re
Nickolas J. Hagman
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

*Counsel for Plaintiffs and the Class*

## TABLE OF CONTENTS

**Nature of the Action**..................................................................................1

**Parties**..................................................................................................4

    *Plaintiffs* ..........................................................................................4

    *Defendants* ........................................................................................5

**Jurisdiction and Venue**..........................................................................5

**Defendants' Courthouse Holding Cells**................................................6

**Pretrial Detainees Have a Right of Privacy When Using the
Toilet in a Holding Cell**..........................................................................7

**Defendants' Video Surveillance Policy** ................................................9

**Defendants' Strip Search Policy** ..........................................................11

**Defendants Do Not Have a Legitimate Interest in
Monitoring Pretrial Detainees Using the Toilet** ..................................13

**Monitoring and Recording Pretrial Detainees Using the
Toilet is Highly Offensive and Objectionable** ......................................16

**Being Monitored and Recorded Using the Toilet
Causes Mental Anguish and Humiliation** ............................................17

**Factual Allegations Pertaining to Plaintiffs**......................................17

**Class Allegations** ..................................................................................20

**COUNT I: Unreasonable Searches in Violation of the Fourth And
Fourteenth Amendments**........................................................................22

**COUNT II: Invasion of Privacy — Intrusion Upon Seclusion** ..............25

**Jury Demand** ........................................................................................27

NOW COME Plaintiffs ELIZABETH ALICEA ("Alicea"), MICHELLE URRUTIA ("Urrutia"), KATINA RAMOS ("Ramos"), and JACK ARTINIAN ("Artinian") (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel at ZIMMERMAN LAW OFFICES, P.C., and complain against Defendants COUNTY OF COOK ("Cook County") and THOMAS J. DART ("Dart" or "Sheriff"), individually, and in his official capacity as Sheriff of Cook County (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action against Defendants, pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law, for unauthorized, illegal, and unreasonable searches by Defendants that violate Plaintiffs' and Class members' rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches, and violations of Plaintiffs' and Class members' privacy.

2.      Plaintiffs and those similarly situated (hereinafter collectively referred to as "Pretrial Detainees") are individuals who were temporarily held in Defendants' custody.  The vast majority of these individuals have simply been arrested and are waiting to go to court to post bond for their release, and they have not been convicted of any crime.

3.      Plaintiffs challenge Defendants' policy of monitoring and recording Pretrial Detainees in Cook County courthouse pretrial holding cells ("Holding Cells") when the Pretrial Detainee is using the toilet in the Holding Cell, including the monitoring and recording of Pretrial Detainees' genitals when using the toilet.

4.      Every Holding Cell has a toilet in the cell.  The Holding Cells have solid partitions or dividing walls that separate the toilet area from the rest of the Holding Cell.  (*See, e.g.*, photograph of a Holding Cell, attached hereto as Exhibit A).  Similar to any public

restroom, the partitions provide privacy to someone using the toilet, so that he/she cannot be seen by anyone else in the Holding Cell. Further, the partitions prevent Cook County Sheriff's deputies from being able to view a Pretrial Detainee using the toilet when the deputy looks through the window in the door to the Holding Cell.

5. However, Defendants installed cameras in the Holding Cells to monitor Plaintiffs and Class members using the toilet. These cameras have an unobstructed view of the Holding Cell toilet, including an unobstructed view of a Pretrial Detainee's genitals when he/she is using the toilet in the Holding Cell.

6. When a Pretrial Detainee is in a Holding Cell, the video feed from the camera in the Holding Cell is continually monitored by Sheriff's deputies from a monitoring room located within the facility ("Monitoring Room"). The Monitoring Room is staffed by both male and female Sheriff's deputies who monitor all Pretrial Detainees—regardless of whether they are male or female—in the Holding Cells.

7. Pretrial Detainees have not been convicted of the alleged crimes for which they are being detained when they are placed in the Holding Cells, and many Pretrial Detainees are held for minor offenses, such as traffic law violations or misdemeanors. As such, even when in Defendants' custody, Pretrial Detainees retain an expectation of privacy in their naked bodies, genitals, and bodily functions.

8. Additionally, Pretrial Detainees have a right to prevent their naked bodies and genitalia from be viewed by members of the opposite sex.

9. Defendants do not warn or otherwise notify Pretrial Detainees, including Plaintiffs and Class members, that they are being monitored while using the toilet in the Holding

Cell, or that the cameras monitor and record a Pretrial Detainee's genitals when he/she is using the toilet.

10.     Further, video of each Holding Cell—including the toilet area in the Holding Cell when being used by a Pretrial Detainee—is recorded and retained for 30 days.  The recorded video can be accessed and reviewed by both male and female employees in any Cook County facility within 30 days of the event.

11.     Defendants are aware that their practice of monitoring and recording Pretrial Detainees using the toilet in the Holding Cells violates Pretrial Detainees' constitutional rights and privacy.  As such, at some Cook County courthouses—in order to further protect the privacy of Pretrial Detainees using the toilet—Defendants place a censor box or otherwise obscure the video of Pretrial Detainee's genitals when using the toilet area.

12.     However, on information and belief, the use of a censor box to cover the Pretrial Detainees' genital area is not common practice and is only used in a few Holding Cells.

13.     Defendants do not have any security or penological interest in monitoring and recording Pretrial Detainees using the toilet in Holding Cells, and do not have any security or penological interest in monitoring and recording Pretrial Detainees' genitals when using the toilet in Holding Cells.  Pretrial Detainees are searched multiple times prior to being placed in a Holding Cell, and many Pretrial Detainees have not been charged with a crime involving a weapon or controlled substance.  Further, Defendants do not have any reasonable suspicion that Pretrial Detainees are hiding any contraband when they are placed in the Holding Cell.

14.     Moreover, Defendants' conduct of monitoring and recording Pretrial Detainees using the toilet in Holding Cells violates Defendants' own written policy regarding strip searches, which makes clear that monitoring and recording Pretrial Detainees is unnecessary to

3

accomplish legitimate security and penological interests, in light of the invasion of privacy involved.

15.     Defendants' conduct of monitoring Pretrial Detainees when using the toilet in the Holding Cells, including monitoring and recording their genitals, constitutes an unreasonable search of Pretrial Detainees in violation of the Fourth and Fourteenth Amendments.  Further, Defendants' conduct constitutes an invasion of Plaintiffs' and Class members' privacy.

16.     Accordingly, Plaintiffs bring this action on behalf of themselves and all others similarly situated for invasion of privacy and Defendants' continuous practice of violating the Fourth and Fourteenth Amendment rights of Pretrial Detainees.

## PARTIES

### *Plaintiffs*

17.     Plaintiff Elizabeth Alicea is, and was at all relevant times, a resident of the State of Illinois, and was a Pretrial Detainee and was held in a courthouse Holding Cell in Cook County, Illinois.

18.     Plaintiff Michelle Urrutia is, and was at all relevant times, a resident of the State of Illinois, and was a Pretrial Detainee and was held in a courthouse Holding Cell in Cook County, Illinois.

19.     Plaintiff Katina Ramos is, and was at all relevant times, a resident of the State of Illinois, and was a Pretrial Detainee and was held in a courthouse Holding Cell in Cook County, Illinois.

20.     Plaintiff Jack Artinian is, and was at all relevant times, a resident of the State of Illinois, and was a Pretrial Detainee and was held in a courthouse Holding Cell in Cook County, Illinois.

*Defendants*

21.     Defendant Cook County is a county within the State of Illinois.  Cook County oversees the Cook County Sheriff, Cook County Court Services Department, and Cook County courthouses, including the Holding Cells in the Cook County courthouses.

22.     Defendant Thomas J. Dart is a resident of Cook County, Illinois and was at all relevant times the duly elected Sheriff of Cook County.  At all relevant times, Dart acted as Cook County's chief law enforcement officer and in the course and scope of his employment as the agent, servant and official policymaker for Cook County relative to the care of its Pretrial Detainees in Cook County Holding Cells, and the policies, procedures, customs, acts, and omissions challenged by this suit.  At all relevant times, Dart was the commanding officer of all Cook County Sheriff's deputies, correctional officers, and jail employees, and he was responsible for supervising and conducting training in compliance with federal and state requirements relative to the treatment of Pretrial Detainees.  He is being sued in his official and individual capacities.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendants are residents of Cook County, and the events giving rise to the claims in this case occurred in Cook County.

## DEFENDANTS' COURTHOUSE HOLDING CELLS

25.     Defendants operate the courthouse Holding Cells located in all Cook County, Illinois courthouses.  There are ten courthouses in Cook County that hear criminal matters: Skokie, Rolling Meadows, Maywood, Bridgeview, Markham, Grand and Central, Belmont and Western, 51st and Wentworth, Harrison and Kedzie, and 26th and California.

26.     Holding Cells in the Cook County courthouses are designed to provide occupants of the cell with privacy when using the toilet by shielding the toilet area with solid partitions.

27.     Most Holding Cells are designed so that the toilet is located near the back wall of the Holding Cell, and a partition is placed next to the toilet.  The partitions prevent someone using the toilet in the Holding Cell from being seen from the seating area and the doorway of the Holding Cell, because the toilet area is obstructed by a solid partition.  (*See, e.g.*, Exhibit A).

28.     While there is no door to the toilet area, the toilet is surrounded by walls or partitions, except for a small entranceway to access the toilet.  Therefore, the design of the Holding Cell creates an expectation of privacy when using the toilet.

29.     While the exact shape and specifications of Holding Cells in the Cook County courthouses vary, the Holding Cells and toilet partitions are substantially similar.

30.     Pretrial Detainees are placed in Holding Cells when they are in Defendants' custody and are required to appear at a Cook County courthouse (such as a bond hearing, status hearing, or any other court hearing).  Pretrial Detainees are held in a Holding Cell both before and after the court hearing.

31.     For example, when an individual is arrested by the police, the person is first searched by the arresting officer at the time of the arrest, is taken into custody, and then transported to a Cook County police precinct.  Within the next day, the arrestee is taken to a

6

Cook County courthouse for a bond hearing. When the police transfer custody of the arrestee to the Sheriff, the arrestee is searched again by the Sheriff's deputies, and then placed into a Holding Cell to wait to be taken to the courtroom.

32. After the courtroom appearance, the Pretrial Detainee is placed back into the Holding Cell until he/she is either released on bond, or is transferred to the Cook County jail and remains in custody. If the Pretrial Detainee remains in custody, anytime he/she is required to appear in court for that case, he/she is transported to a courthouse and placed in a Holding Cell when he/she is not actually in the courtroom. However, regardless of the reason why a person is placed in a Holding Cell, he/she is searched multiple times before being placed into the Holding Cell.

33. Pretrial Detainees are usually taken to the courthouse in the early morning hours. Pretrial Detainees are not released or transported to the Cook County jail until either late morning or late afternoon. As such, Pretrial Detainees are held in Holding Cells for multiple hours, and will have to use the toilet in the Holding Cell to relieve themselves.

34. While in the Holding Cells, Pretrial Detainees are free to use the toilet as is necessary.

35. Each Holding Cell has only one toilet per cell. Thus, when a Pretrial Detainee is using the toilet, he/she is secluded behind the solid partitions. As such, Pretrial Detainees have an expectation of privacy when using the toilet.

## PRETRIAL DETAINEES HAVE A RIGHT OF PRIVACY WHEN USING THE TOILET IN A HOLDING CELL

36. For the reasons set forth above, even though Pretrial Detainees are in custody, they have an objectively reasonable expectation of privacy when using the toilet in the Holding

Cells. Further, even when in custody, Pretrial Detainees have a right to privacy in their genitals when using the toilet in a Holding Cell.

37. Plaintiffs' and Class members' reasonable expectation of privacy is not distinguished when they were taken into Defendants' custody. *Canedy v. Boardman*, 16 F.3d 183, 186 (7th Cir. 1994) (citing *Bonner v. Coughlin*, 517 F.2d 1311, 1317 (7th Cir. 1975)). As pretrial detainees, and not convicted prisoners, Plaintiffs' and Class members' expectation of privacy is greater than a prisoner's expectation of privacy when in Defendants' custody. *Cottrell v. Kaysville City*, 994 F.2d 730 (10th Cir. 1993); *Chapman v. Nichols*, 989 F.2d 393 (10th Cir. 1993).

38. Even in a courthouse Holding Cell, Pretrial Detainees retain an expectation of privacy regarding their naked bodies, genitals, and bodily functions, especially when viewed by members of the opposite sex. *See, e.g.*, *York v. Story*, 324 F.2d 450 (9th Cir. 1963).

39. Pretrial Detainees have a reasonable expectation of privacy when using the toilet in the Holding Cell. The Pretrial Detainees were legitimately in the toilet area being searched. The Pretrial Detainees were not trespassing, and they are freely allowed to use the toilet areas in the Holding Cells while they are in the cells.

40. The Pretrial Detainees have a possessory interest in the toilet area of the Holding Cell when they are using the toilet, and using the toilet excludes anyone else from being able to use it at that time. Only one person can use the toilet at any given time. Defendants' improper search is limited to the partitioned toilet area and not the entire Holding Cell.

41. The Holding Cells are designed with solid partitions to prevent anyone in the Holding Cell or looking through the door from being able to see into the toilet area. Further, the cameras in the Holding Cells are placed in boxes or dark domes that prevent Pretrial Detainees

from determining that a camera can see the toilet and their genitals when they are using the toilet. Moreover, Pretrial Detainees are not given any warning that they are being monitored and recorded when using the toilet and that their genitals can be seen in video feeds.

42.     As a right of bodily integrity, the Pretrial Detainees owned, possessed, and can exclude others from viewing their genitals. Further, it is inherent that using a toilet is a private event.

43.     In fact, Pretrial Detainees' expectation of, and right to, privacy is recognized by Defendants' written policy regarding searches of individuals in custody. (*See* Cook County Court Services Department, IL Policy Manual, Policy 1001 – Custodial Searches ("Search Policy"), attached hereto as <u>Exhibit B</u>). According to Search Policy 1001.5.1(g), Sheriff's deputies are generally prohibited from watching Pretrial Detainees use the toilet. (*See* <u>Exhibit B</u>, Section 1001.5.1(g) – Strip Search Procedures). Even when doing so is "reasonably necessary," Search Policy 1001.5.1(g) requires Sheriff's deputies to take "reasonable steps…to obtain the individual's consent and/or otherwise protect his/her privacy and dignity." (*See id.*).

## DEFENDANTS' VIDEO SURVEILLANCE POLICY

44.     Despite having a reasonable expectation of, and right to, privacy when using the toilets in the Holding Cells, Pretrial Detainees are not given any indication that they will be monitored by security cameras in the Holding Cell when doing so.

45.     Pretrial Detainees are not given any verbal or written warnings that they are monitored by security cameras in the Holding Cell prior to being placed in a Holding Cell, that there are cameras in the Holding Cells with an unobstructed view of the toilet area, or that a camera has an unobstructed view of a Pretrial Detainee's genitals when they are using the toilet in the Holding Cell.

9

46. Moreover, the cameras in the Holding Cell are housed in boxes or dark domes that prevent Pretrial Detainees from being able to see where the camera is pointed, or determine that the camera can see into the toilet area and record the Pretrial Detainee's genitals when using the toilet.

47. The cameras indiscriminately record all activity in the Holding Cells, including a Pretrial Detainee's use of the toilet, and the video feed is continually monitored by Cook County Sheriff's deputies when a Pretrial Detainee is in the Holding Cell. Both male and female Sheriff's deputies monitor the video of the Holding Cells from the Monitoring Room.

48. On information and belief, the video feeds are not separated by gender. As such, male deputies monitor both male and female Pretrial Detainees in the Holding Cells, and female deputies monitor both male and female Pretrial Detainees in the Holding Cells.

49. In addition to Sheriff's deputies monitoring the Holding Cells in real time, the video feed is also recorded and maintained by Defendants for 30 days. (*See* Cook County Court Services Department, IL Policy Manual, Policy 138 – Video Surveillance System ("Video Surveillance Policy"), attached hereto as Exhibit C, at § 138.2). The video feed of the Holding Cells can also be accessed by anyone with sufficient security clearance anywhere in Cook County within 30 days of the video. (*Id.* at § 138.3(d)).

50. The Video Surveillance Policy also requires Defendants' "unit heads" to "inspect[] all cameras (*e.g.*, view, angle, clarity of picture, obstructions) . . . at a minimum of at least once a week." (*See* Exhibit C, at § 138.5(h)). Thus, Defendants have actual knowledge that the cameras are monitoring and recording an unobstructed view of the toilet area in the Holding Cells.

10

## DEFENDANTS' STRIP SEARCH POLICY

51. Defendants' Search Policy, as it pertains to strip searches, requires that all searches of individuals in custody "be conducted with concern for safety, dignity, courtesy, respect for privacy and hygiene, and in compliance with policy and law to protect the rights of those who are subject to any search." (*See* Exhibit B, Section 1001.2 – Policy).

52. The Search Policy defines a "strip search" as "a search that requires an individual to remove or rearrange some or all of his/her clothing to permit a visual inspection of the underclothing, breasts, buttocks, anus, or outer genitalia. This includes monitoring an individual who is changing clothes, where his/her underclothing, buttocks, genitalia or female breasts are visible." (*See* Exhibit B, Section 1001.1.1 – Definitions).

53. Further, the Search Policy limits when strip searches may be performed. The Search Policy provides, "No individual in temporary custody at any Sheriff's Office facility shall be subjected to a strip search unless there is a reasonable suspicion based upon specific and articulable facts to believe the individual has a health condition requiring immediate medical attention or is concealing a weapon or contraband." (*See* Exhibit B, Section 1001.5 – Strip Searches). Additionally, except in cases involving weapons or controlled substances, the Search Policy prohibits performing strip searches on individuals arrested for traffic, regulatory, or misdemeanor offenses, "unless there is a reasonable belief that the individual is concealing a weapon or controlled substance." (*See id.*).

54. To perform a strip search on a Pretrial Detainee, Defendants must have written authorization from the watch commander prior to performing a strip search. (*See* Exhibit B, Section 1001.5.1(a) – Strip Search Procedures). After written authorization has been obtained,

the strip search must be performed in a secure area of privacy, and "shall not be reproduced through a visual or sound recording." (*See id.* at § 1001.5.1(c)).

55.     Additionally, the Search Policy prohibits deputies from "view[ing] an individual's private underclothing, buttocks, genitalia or female breasts while that individual is showering, performing bodily functions or changing clothes, unless he/she otherwise qualifies for a strip search." (*See* Exhibit B, at 1001.5.1(g)).  To perform a strip search, Defendants must "ensure reasonable steps are taken to obtain the individual's consent and/or otherwise protect his/her privacy and dignity." (*See id.*).

56.     The Search Policy requires that all strip searches be performed by Sheriff's deputies of the same gender as the Pretrial Detainee being searched.  (*See* Exhibit B, at § 1001.5.1(b)).

57.     Defendants' monitoring and recording of Pretrial Detainees using the toilet in Holding Cells (as described above) implicates similar security, penological, and privacy interests as a strip search under the Search Policy.  To use the toilet, Pretrial Detainees must remove or rearrange clothing, which exposes the Pretrial Detainee's genitals.  This allows Sheriff's deputies—frequently of the opposite gender—to view a Pretrial Detainee's private underclothing, buttocks, genitalia and female breasts while that individual is performing bodily functions.  As such, Defendants are necessarily performing a visual inspection of the Pretrial Detainee's underclothing, breasts, buttocks, anus, or outer genitalia, which is essentially a strip search that would be subject to the Search Policy.

### DEFENDANTS DO NOT HAVE A LEGITIMATE INTEREST IN MONITORING PRETRIAL DETAINEES USING THE TOILET

58. It is not necessary for Defendants to monitor Pretrial Detainees when using the toilet in the Holding Cells. Monitoring and recording Pretrial Detainees using the toilet serves no legitimate security or penological interest.

59. Pretrial Detainees are searched by the police multiple times prior to being placed in a Holding Cell. Between the first time they are searched by the police and the time they are placed in the Holding Cell, there is no opportunity for them to possess contraband. If a Pretrial Detainee possessed any contraband it would be discovered during those searches, before the Pretrial Detainee was placed in a Holding Cell.

60. Additionally, the Search Policy states that in order to perform a strip search, Sheriff's deputies must have a reasonable suspicion based on articulable facts specific to the individual Pretrial Detainee that he/she is hiding a weapon or contraband. However, on information and belief, Defendants do not have a reasonable suspicion that every Pretrial Detainee possesses a weapon or contraband that would support a policy of monitoring every Pretrial Detainee using the toilet. Instead, Defendants indiscriminately monitor every Pretrial Detainee using the toilet in a Holding Cell, regardless of the reason the individual was placed in the Holding Cell, as all Pretrial Detainees are searched by the police at least twice prior to being placed in a Holding Cell and many Pretrial Detainees are not held on charges involving weapons or controlled substances.

61. Defendants have no security interest in having Sheriff's deputies of the opposite gender monitor Pretrial Detainees using the toilet. Both male and female Sheriff's deputies are stationed in the Monitoring Room to monitor the video feeds from the cameras in the Holding Cells. However, the monitoring is not separated so that male officers can only monitor male

13

Pretrial Detainees, and female deputies can only monitor female Pretrial Detainees. As such, male deputies view both male and female Pretrial Detainees using the toilet in Holding Cells—including viewing both male and female Pretrial Detainees' genitals—and female deputies view both male and female Pretrial Detainees using the toilet in Holding Cells—including viewing both male and female Pretrial Detainees' genitals. Such conduct violates the Search Policy. (*See* Exhibit B, at § 1001.5.1(b)).

62.     If substantially similar activities were performed relative to a strip search—*e.g.*, performing a visual inspection of the Pretrial Detainee's genitals to determine whether the Pretrial Detainee is concealing a weapon or contraband, despite the lack of reasonable suspicion as to whether that is the case—such a search would violate the Search Policy.  Put another way, the Search Policy makes clear that under similar circumstances, the security and penological interests involved do *not* outweigh the invasion of a prisoner's privacy.

63.     Based on the balancing of interests inherent in the Search Policy promulgated by Defendants, indiscriminate monitoring and recording of all Pretrial Detainees using the toilet in Holding Cells is clearly unnecessary to accomplish legitimate security and penological interests.

64.     Moreover, with respect to Pretrial Detainees in the Holding Cells, Defendants' security and penological interests are diminished, as all Pretrial Detainees are searched by the police at least twice prior to being placed in a Holding Cell and many Pretrial Detainees are not held on charges involving weapons or controlled substances.  In contrast, Pretrial Detainees have a greater expectation of privacy than prisoners when in Defendants' custody.

65.     Therefore, there is even less of a justification to monitor and record Pretrial Detainees while they use the toilets in Holding Cells than there is relative to performing strip searches of prisoners.

14

66. Pretrial Detainees are not warned or otherwise notified that the toilet area in the Holding Cell, and their genital areas when using the toilet, are being monitored in real time and recorded. Further, the cameras are housed in boxes or black domes that prevent the Holding Cell occupant from seeing where the camera is pointed. As such, there is no possible deterrent effect for monitoring Pretrial Detainees using the toilets in the Holding Cells or viewing a Pretrial Detainee's genitals when using the toilet.

67. Even if Defendants have a security interest in monitoring the toilet area of the Holding Cell, Defendants possess the means to prevent the unlawful monitoring and recording of Pretrial Detainees' genitals when they are using the toilet in the Holding Cells by simply placing a censor box on the camera feed to obscure the view of the Pretrial Detainees' genital area on the toilet. This is a "less-invasive" means for Defendants to monitor the toilet area of the Holding Cell, should it be necessary.

68. Placing a censor box in the video feed of the Holding Cell cameras would prevent Defendants' employees from being able to view Pretrial Detainees' genitals when they are using the toilet in the Holding Cells, and would prevent Sheriff's deputies of the opposite gender from being able to view Pretrial Detainees' genitals when using the toilet.

69. Positioning cameras in Holding Cells to have an unobstructed view of the toilet—without censoring a Pretrial Detainee's genitals when he/she is using the toilet in the Holding Cell—constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments and an invasion of the Pretrial Detainees' right of privacy.

70. Additionally, the Search Policy relative to strip searches indicates that monitoring Pretrial Detainees when using the toilet in the Holding Cells does not serve a legitimate security or penological interest.

15

71.     As such, monitoring Pretrial Detainees using the toilet, including viewing their genitals when using the toilet—without censoring Pretrial Detainees' genitals—constitutes an unreasonable search of Pretrial Detainees, and an invasion of their privacy.

## MONITORING AND RECORDING PRETRIAL DETAINEES
## <u>USING THE TOILET IS HIGHLY OFFENSIVE AND OBJECTIONABLE</u>

72.     Defendants' policy of monitoring and recording Pretrial Detainees using the toilet in Holding Cells, including viewing and recording their genitals when using the toilet, is highly invasive and objectionable.

73.     Using the toilet is a highly personal activity.  Surreptitiously monitoring and recording individuals using the toilet violates the individual's privacy and dignity. *See Harkey v. Abate*, 346 N.W.2d. 74, 76 (Ct. App. Mich. 1983) (finding that using the toilet in a public restroom is a private matter).

74.     Defendants recognize that viewing a Pretrial Detainee's use of the toilet is offensive and objectionable because the Search Policy prohibits viewing Pretrial Detainees' genitals when they are performing bodily functions.  (*See* <u>Exhibit B</u>, § 1001.5.1(g)).

75.     Moreover, the scope of the strip searches is excessive.  Many Pretrial Detainees were arrested for traffic, regulatory, or misdemeanor offenses, and Defendants do not have any reasonable belief that the Pretrial Detainees are hiding a weapon or contraband that would be discovered by monitoring Pretrial Detainees using the toilet.

76.     Additionally, it is objectionable and offensive to have Sheriff's deputies of the opposite gender view Pretrial Detainees' genitals when the person is using the toilet.

77.     Defendants recognize that having Sheriff's deputies of the opposite gender as the Pretrial Detainee view the Pretrial Detainee's genitals when using the toilet is objectionable and offensive because the Search Policy prohibits Sheriff's deputies from performing or viewing

16

strip searches of Pretrial Detainees when they are not the same gender. (*See, e.g.*, Exhibit B, § 1001.5.1(b)).

78.     Therefore, the Search Policy makes clear that Sheriff's deputies of the opposite gender monitoring and recording Pretrial Detainees using the toilet serves no legitimate security or penological interest, and Defendants' conduct constitutes an unreasonable search in violation of the 4th and 14th Amendments and an invasion of the Pretrial Detainees' objectively reasonable expectation of privacy.

### BEING MONITORED AND RECORDED USING THE TOILET CAUSES MENTAL ANGUISH AND HUMILIATION

79.     Being monitored by Sheriff's deputies of the opposite gender when using the toilet in a Holding Cell and having their genitals monitored by Sheriff's deputies of the opposite gender is highly offensive and objectionable to a reasonable person.

80.     As a result of being monitored while using the toilet in the Holding Cell, including having their genitals monitored and recorded when performing bodily functions, Plaintiffs and Class members suffered actual and presumed damages, including mental anguish, loss of dignity, humiliation, and emotional distress.

81.     As a result of being monitored by Sheriff's deputies of the opposite gender when using the toilet in a Holding Cell and having their genitals monitored by Sheriff's deputies of the opposite gender, Plaintiffs and Class members suffered actual and presumed damages, including mental anguish, loss of dignity, humiliation, and emotional distress.

### FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFFS

82.     Plaintiff Alicea was arrested for misdemeanor theft in May 2018. Plaintiff Alicea was taken to the Cook County courthouse at 26th and California, and was placed in a Holding Cell. Plaintiff Alicea was searched by the arresting police and was searched again by the

Sheriff's deputies prior to being placed in the Holding Cell. Plaintiff Alicea was taken to court where she was granted release on her own recognizance. Plaintiff Alicea was then brought back to the Holding Cell where she remained until she was released. Both before and after she was taken into the courtroom, Plaintiff Alicea used the toilet in the Holding Cell. On information and belief, when Plaintiff Alicea used the toilet in the Holding Cell, she was monitored by Sheriff's deputies and recorded by Defendants' camera in the Holding Cell. This monitoring and recording of Plaintiff Alicea using the toilet occurred before and after she was released, and she was not convicted of the misdemeanor theft charge at the time of the monitoring. Ultimately, the misdemeanor theft charge was dropped with no conviction.

83.     Plaintiff Urrutia was arrested for misdemeanor driving on a suspended license in 2017. Plaintiff Urrutia was taken to the Cook County courthouse in Rolling Meadows, and was placed in a Holding Cell. Plaintiff Urrutia was searched by the arresting police and was searched again by the Sheriff's deputies prior to being placed in the Holding Cell. Prior to being taken into the courtroom, Plaintiff Urrutia used the toilet in the Holding Cell. On information and belief, when Plaintiff Urrutia used the toilet in the Holding Cell, she was monitored by Sheriff's deputies and recorded by Defendants' camera in the Holding Cell.

84.     Plaintiff Ramos was taken into Defendants' custody in October 2017 for failure to complete court-ordered classes within the required time. Plaintiff Ramos was in Defendants' custody until March 2018. While Plaintiff Ramos was in Defendants' custody, Plaintiff Ramos was taken to the Cook County courthouse in Skokie for court appearances in that matter. Each time Plaintiff Ramos was taken to the Cook County courthouse in Skokie, she was placed in a Holding Cell both before and after the court appearance. On each occasion, Plaintiff Ramos used the toilet in the Holding Cell. On information and belief, when Plaintiff Ramos used the

toilet in the Holding Cell, she was monitored by Sheriff's deputies and recorded by Defendants' cameras in the Holding Cell.

85.     Plaintiff Artinian was arrested for harassment in April 2017.  Plaintiff Artinian was in Defendants' custody from April 2017 to June 8, 2017, and from August 3, 2017 to September 2, 2017.  When Plaintiff Artinian was in Defendants' custody, he was taken to the Cook County courthouse in Skokie for court appearances in that matter.  Each time Plaintiff Artinian was taken to the Cook County courthouse in Skokie, he was placed in a Holding Cell in the courthouse.  On each occasion, Plaintiff Artinian used the toilet in the Holding Cell.  On information and belief, when Plaintiff Artinian used the toilet in the Holding Cell, he was monitored by Sheriff's deputies and recorded by Defendants' cameras in the Holding Cell.

86.     Each Plaintiff reasonably believed that they had privacy when using the toilets in the Holding Cells. To access the toilets, Plaintiffs walked behind solid partitions, and were not able to be seen by anyone looking through the window in the door to the Holding Cell or by any other Pretrial Detainee in the seating area of the Holding Cell.  Plaintiffs were not able to determine that a camera in the Holding Cell could see into the toilet area and that they were being monitored when using the toilet because the cameras are in boxes or dark domes that obscure the direction that the camera is pointed.

87.     By walking around the solid partition into the enclosed toilet area, Plaintiffs and Class members were secluded in the toilet area.  Plaintiffs and Class members did not consent to be monitored and recorded when using the toilets in the Holding Cells.  Further, Plaintiffs and Class members did not consent to have their genitals monitored and recorded when they were using the toilets in the Holding Cells.

88.     Plaintiffs and Class members would not have expected that cameras hidden in the boxes or dark domes were secretly aimed at the toilet area of the Holding Cells, as there was no advance notice given to them by Defendants and a reasonable person would not expect to be monitored or video recorded while using the toilet.

89.     As a result of Defendants' conduct, Plaintiffs and Class members suffered actual and presumed damages, including mental anguish, loss of dignity, humiliation, and emotional distress.

## CLASS ALLEGATIONS

90.     **Class Definition:** Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and a Class of all others similarly situated, defined as follows:

> All persons who used the toilet in a pretrial holding cell in a courthouse in Cook County, Illinois, wherein there was an unobscured camera feed monitoring the toilet area in the cell.

Excluded from the Class are: (1) Defendants and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

91.     **Numerosity:** The Class is so numerous that joinder of all individual members in one action would be impracticable. On information and belief, the proposed Class consists of tens of thousands of individuals, as Defendants hold hundreds of Pretrial Detainees in Cook County courthouse Holding Cells each day.  In fact, the Cook County Sheriff's Office states that the "daily jail population averages 7,500 pre-trial detainees not yet convicted of their charges"[1] most of whom are required to appear in court at least once per month, and are placed in a Holding Cell before and after the court hearing.  The exact number of members in the Class is

---

[1] *See Corrections*, COOK COUNTY SHERIFF, *available at:* https://www.cookcountysheriff.org/cook-county-department-of-corrections (last accessed August 2, 2018).

presently unknown, can only be ascertained through discovery, and can easily be identified through Defendants' records or by other means.

92.     **Commonality and Predominance:** There are common questions of fact and law affecting members of the Class, which common questions predominate over questions which may affect individual members.  These include the following:

> a.      Whether Pretrial Detainees have a right of privacy when using the toilet in a Cook County Courthouse Holding Cell;
>
> b.      Whether the Sheriff's viewing and recording a Pretrial Detainee using a toilet in a Holding Cell constitutes an unreasonable search;
>
> c.      Whether the Sheriff's viewing and recording a Pretrial Detainee using a toilet in a Holding Cell constitutes an invasion of privacy;
>
> d.      Whether being viewed using the toilet by a Sheriff's deputy of the opposite gender constitutes an unreasonable search or an invasion of privacy;
>
> e.      Whether being viewed using the toilet by a Sheriff's deputy is highly offensive and objectionable to a reasonable person; and
>
> f.      Whether the Sheriff violated the Class members' right of privacy.

93.     **Typicality:** Plaintiffs' claims are typical of the claims of the proposed Class.  All claims are based on the same legal and factual issues.  Plaintiffs and each of the Class members were Pretrial Detainees, were held in a Cook County Courthouse Holding Cell, were monitored and recorded, and had their genitalia monitored and recorded by Defendants when they were using the toilet in a Holding Cell.  Defendants engaged in the uniform conduct of monitoring and recording Pretrial Detainees, including their genitalia, without authorization when the Pretrial Detainees were using the toilet in a Cook County Courthouse Holding Cell.

94.     **Adequacy:** Plaintiffs are capable of fairly and adequately protecting the interests of the Class and will diligently serve as class representatives. Plaintiffs do not have any interests

antagonistic to the Class. Finally, Plaintiffs have retained counsel competent and experienced in complex class actions.

95.     **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and expense of individual prosecution of these claims against Defendants. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

**<u>COUNT I</u>**
**Unreasonable Searches in Violation of the Fourth and Fourteenth Amendments**

96.     Plaintiffs repeat and reallege paragraphs 1 through 95, with the same force and effect as though fully set forth herein.

97.     At all relevant times, there was in full force United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

98.     Actions against state officials seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983.

99.     Pretrial Detainees, including Plaintiffs and Class members, are "persons" as defined under 42 U.S.C. § 1983.

100.    At all relevant times, Defendants acted under the color of law.

101.    Defendants have a policy of continuously monitoring Pretrial Detainees using the toilet and monitoring their genitals when using the toilet, as Defendants placed cameras in the Holding Cells in positions that have an unobstructed view of the toilets in the Holding Cells, failed to censor or otherwise obscure the genital area of Pretrial Detainees using the toilet, and continuously monitored the video feed of the cameras when Pretrial Detainees used the toilet.

102.    Defendants' conduct and policy of monitoring Plaintiffs and Class members when they are using the toilet in the Holding Cells constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  U.S. Const. Amend. IV and XIV.

103.    Defendants' policy and conduct of viewing Plaintiffs' and Class members' genitals when they are using the toilet in the Holding Cells constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  U.S. Const. Amend. IV and XIV.

104.    Defendants' policy and conduct of having Sheriff's deputies view Pretrial Detainees of the opposite gender when they are using the toilet in the Holding Cells constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  U.S. Const. Amend. IV and XIV.

105.    Under 42 U.S.C. § 1988, the prevailing party may recover damages and fees.  For the injured party, compensatory damages include personal injuries, pain and suffering, and humiliation.  *See Madison Co. Jail Inmates v. Thompson*, 773 F.2d 834 (7th Cir. 1985).  Further, Section 1988 provides for the plaintiff to recover attorneys' fees and costs.

106.    Individuals who were subject to an unreasonable search may recover damages for the emotional and mental distress, shock, panic, depression, shame, rage, and humiliation that resulted from the unreasonable search. *See Mary Beth G. v. Chicago*, 723 F.2d 1263, 1275 (7th Cir. 1983).

107.    A plaintiff is presumed to have suffered damages for violations of liberty, bodily injury, or where it is difficult to place a value on the invasion. *See e.g., Corriz v. Naranjo*, 667 F.2d 892, 897 (10th Cir. 1981); *Bell v. Little Axe Indep. School Dist.*, 766 F.2d 1391, 1410 (10th Cir. 1985).

108.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members suffered actual and presumed damages, including mental anguish, loss of dignity, and emotional distress.

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class, as defined herein;

b.    Designating Plaintiffs as representatives of the Class;

c.    Designating Plaintiffs' Counsel as Class Counsel for the Class;

d.    Entering judgment in favor of Plaintiffs and the Class, and against Defendants;

e.    Awarding Plaintiffs and the Class damages in an amount to be determined at trial;

f.    Awarding Plaintiffs and the Class punitive damages in an amount to be determined at trial;

g.    Awarding Plaintiffs and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law; and

h.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
## Invasion of Privacy — Intrusion Upon Seclusion

109.    Plaintiffs repeat and reallege paragraphs 1 through 95, with the same force and effect as though fully set forth herein.

110.    To state a claim for intrusion upon seclusion, a plaintiff must prove: 1) an unauthorized intrusion or prying into the plaintiff's seclusion, 2) the intrusion that is highly offensive or objectionable to a reasonable person, 3) the matter upon which the intrusion occurs is private, and 4) the intrusion caused anguish and suffering. *See Schmidt v. Ameritech Illinois*, 329 Ill.App.3d 1020, 1030 (1st Dist. 2002).

111.    Pretrial Detainees, including Plaintiffs and Class members, have an objectively reasonable expectation of privacy when using the toilets in Holding Cells, as the toilet area is shielded from view by solid partitions, the Holding Cells are designed so that the toilet is secluded from the rest of the Holding Cell, Defendants do not give Pretrial Detainees any oral or written warnings that cameras can view into the toilet area, and the cameras are housed in boxes or dark domes that obscure where the camera is pointed.

112.    Defendants' monitoring of Plaintiffs and Class members when they are using the toilets in Holding Cells is unauthorized as Plaintiffs and Class members did not consent to be monitored and video recorded when using the toilet, Defendants' Search Policy prohibits monitoring Pretrial Detainees when they are using the toilet and viewing their genitals, and there is no sufficient security need or other justification for monitoring Pretrial Detainees or their genitals when they are using the toilets in Holding Cells.

113.    Using the toilet, even when in Defendants' custody in a Cook County Courthouse Holding Cell, is a private matter.  Defendants recognize that using the toilet is a private matter because they designed the Holding Cells with solid partitions to provide privacy when using the

toilet, and Defendants' Search Policy prohibits monitoring Pretrial Detainees when they are using the toilet.

114.     Monitoring and recording Pretrial Detainees and their genitals when they are using the toilets in Holding Cells is highly offensive and objectionable to a reasonable person. The offensiveness is codified in Defendants' Search Policy that prohibits monitoring Pretrial Detainees when they are using the toilet and prohibits viewing Pretrial Detainees' genitalia.

115.     When the intrusion is sufficiently outrageous—as is the case here—the court will presume that the plaintiff suffered severe mental anguish.  *See, e.g., Melvin v. Burling*, 141 Ill.App.3d 786, 789-90 (3rd Dist. 1986).  Further, a plaintiff may recover for both the invasion of his/her privacy and the mental distress that the plaintiff suffered.  *See* Rest. (2d) Torts § 652H (damages for invasion of privacy).

116.     As a result of Defendants' unauthorized monitoring and recording of Pretrial Detainees (including Plaintiffs and Class members) when they used the toilets in Holding Cells—including monitoring and video recording their genitalia by Sheriff's deputies of the opposite gender—Plaintiffs and Class members suffered actual and presumed damages, including but not limited to mental anguish and suffering.

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

    a.     Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class, as defined herein;

    b.     Designating Plaintiffs as representatives of the Class;

    c.     Designating Plaintiffs' Counsel as Class Counsel for the Class;

    d.     Entering judgment in favor of Plaintiffs and the Class, and against Defendants;

e.   Awarding Plaintiffs and the Class damages in an amount to be determined at trial;

f.   Awarding Plaintiffs and the Class punitive damages in an amount to be determined at trial;

g.   Awarding Plaintiffs and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law; and

h.   Granting all such further and other relief as the Court deems just and appropriate.


## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.


Plaintiffs ELIZABETH ALICEA, MICHELLE URRUTIA, KATINA RAMOS, and JACK ARTINIAN, individually, and on behalf of all others similarly situated,


By:  /s/Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (IL #6231944)
*tom@attorneyzim.com*
Sharon A. Harris (IL #6255704)
*sharon@attorneyzim.com*
Matthew C. De Re (IL #6317913)
*matt@attorneyzim.com*
Nickolas J. Hagman (IL #6317689)
*nick@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Counsel for Plaintiffs and the Class

EXHIBIT A



# Custodial Searches

## 1001.1 PURPOSE AND SCOPE

This policy provides guidance regarding searches of individuals in custody. Such searches are necessary to eliminate the introduction of contraband, intoxicants or weapons into any Cook County Court Services Department facility. Such items can pose a serious risk to the safety and security of department members, individuals in custody, contractors and the public.

Nothing in this policy is intended to prohibit the otherwise lawful collection of evidence from an individual in custody.

### 1001.1.1 DEFINITIONS

Definitions related to this policy include:

**Custody search** - An in-custody search of an individual and of his/her property, shoes and clothing, including pockets, cuffs and folds on the clothing, to remove all weapons, dangerous items and contraband.

**Physical body cavity search** - A search that includes a visual inspection and may include a physical intrusion into a body cavity. Body cavity means the stomach or rectal cavity of an individual, and the vagina of a female person.

**Strip search** - A search that requires an individual to remove or rearrange some or all of his/her clothing to permit a visual inspection of the underclothing, breasts, buttocks, anus or outer genitalia. This includes monitoring an individual who is changing clothes, where his/her underclothing, buttocks, genitalia or female breasts are visible.

## 1001.2 POLICY

All searches shall be conducted with concern for safety, dignity, courtesy, respect for privacy and hygiene, and in compliance with policy and law to protect the rights of those who are subject to any search.

Searches shall not be used for intimidation, harassment, punishment or retaliation.

## 1001.3 FIELD AND TRANSPORTATION SEARCHES

A sworn member should conduct a custody search of an individual immediately after his/her arrest, when receiving an individual from the custody of another, and before transporting a person who is in custody in any Sheriff's Office vehicle.

Whenever practicable, a custody search should be conducted by a sworn member of the same sex as the person being searched. If a sworn member of the same sex is not reasonably available, a witnessing member should be present during the search,

# EXHIBIT B

Copyright Lexipol, LLC 2018/03/15, All Rights Reserved.
Published with permission by Cook County

## 1001.4  SEARCHES AT SHERIFF'S OFFICE FACILITIES

Custody searches shall be conducted on all individuals in custody, upon entry to any Sheriff's Office facilities. Except in exigent circumstances, the search should be conducted by a sworn member of the same sex as the individual being searched. If a sworn member of the same sex is not available, a witnessing member must be present during the search.

Custody searches should also be conducted any time an individual in custody enters or re-enters a secure area, or any time it is reasonably believed that a search is necessary to maintain the safety and security of the facility.

### 1001.4.1  PROPERTY

Members shall take reasonable care in handling the property of an individual in custody to avoid discrepancies or losses. Property retained for safekeeping shall be kept in a secure location until the individual is released or transferred.

Some property may not be accepted by a facility or agency that is taking custody of an individual from this department, such as weapons or large items. These items should be retained for safekeeping in accordance with the Property and Evidence Policy.

All property shall be inventoried by objective description (this does not include an estimated value). The individual from whom it was taken shall be required to sign the completed inventory. If the individual's signature cannot be obtained, the inventory shall be witnessed by another department member. The inventory should include the case number, date, time, member's Cook County Court Services Department identification number and information regarding how and when the property may be released.

## 1001.5  STRIP SEARCHES

No individual in temporary custody at any Sheriff's Office facility shall be subjected to a strip search unless there is reasonable suspicion based upon specific and articulable facts to believe the individual has a health condition requiring immediate medical attention or is concealing a weapon or contraband. Factors to be considered in determining reasonable suspicion include, but are not limited to:

(a) The detection of an object during a custody search that may be a weapon or contraband and cannot be safely retrieved without a strip search.

(b) Circumstances of a current arrest that specifically indicate the individual may be concealing a weapon or contraband.

    1. A felony arrest charge or being under the influence of a controlled substance should not suffice as reasonable suspicion absent other facts.

(c) Custody history (e.g., past possession of contraband while in custody, assaults on department members, escape attempts).

(d) The individual's actions or demeanor.

(e) Criminal history (i.e., level of experience in a custody setting).

## Custodial Searches

No person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is reasonable belief that the individual is concealing a weapon or controlled substance (725 ILCS 5/103-1(c)).

No transgender or intersex individual shall be searched or examined for the sole purpose of determining the individual's genital status. If the individual's genital status is unknown, it may be determined during conversations with the person, by reviewing medical records, or as a result of a broader medical examination conducted in private by a medical practitioner (28 CFR 115.115).

### 1001.5.1   STRIP SEARCH PROCEDURES
Strip searches at Sheriff's Office facilities shall be conducted as follows (28 CFR 115.115; 725 ILCS 5/103-1):

(a)   Written authorization from the watch commander shall be obtained prior to the strip search. While awaiting approval for the search, the individual to be searched shall be restrained and isolated from other persons in custody, and shall be under constant visual observation by a sworn member.

(b)   All members involved with the strip search shall be of the same sex as the individual being searched.

(c)   All strip searches shall be conducted in a professional manner under sanitary conditions and in a secure area of privacy so that it cannot be observed by those not participating in the search. The search shall not be reproduced through a visual or sound recording.

(d)   A supervisor of the same sex as the person being searched should also be present during the search.

(e)   Except under extraordinary circumstances, sworn members conducting a strip search should not touch the breasts, buttocks or genitalia of the individual being searched (e.g., self-defense, in response to a lawful order, to render medical assistance).

(f)   The primary sworn member conducting the search shall prepare a written report to include:

   1.   The facts that led to the decision to perform a strip search.

   2.   The reasons less intrusive methods of searching were not used or were insufficient.

   3.   The written authorization for the search, obtained from the watch commander.

   4.   The name of the individual who was searched.

   5.   The name and sex of the members who conducted the search.

   6.   The name, sex and role of any person present during the search.

Copyright Lexipol, LLC 2018/02/15, All Rights Reserved

7. The time and date of the search.

8. The place at which the search was conducted.

9. A list of the items, if any, that were recovered.

10. The facts upon which the sworn member based his/her belief that the individual was concealing a weapon or contraband.

(g) No member should view an individual's private underclothing, buttocks, genitalia or female breasts while that individual is showering, performing bodily functions or changing clothes, unless he/she otherwise qualifies for a strip search. However, if serious hygiene or health issues make it reasonably necessary to assist the individual with a shower or a change of clothes, a supervisor should be contacted to ensure reasonable steps are taken to obtain the individual's consent and/or otherwise protect his/her privacy and dignity.

## 1001.5.2 SPECIAL CIRCUMSTANCE FIELD STRIP SEARCHES

A strip search may be conducted in the field only with watch commander authorization and only in exceptional circumstances, such as when:

(a) There is probable cause to believe that the individual is concealing a weapon or other dangerous item that cannot be recovered by a more limited search.

(b) There is probable cause to believe that the individual is concealing controlled substances or evidence that cannot be recovered by a more limited search, and there is no reasonable alternative to ensure the individual cannot destroy or ingest the substance during transportation.

These special-circumstance field strip searches shall only be authorized and conducted under the same restrictions as the strip search procedures in this policy, except that the watch commander authorization does not need to be in writing.

## 1001.6 PHYSICAL BODY CAVITY SEARCH

Physical body cavity searches shall be subject to the following (725 ILCS 5/103-1):

(a) No individual shall be subjected to a physical body cavity search without written approval of the watch commander and only upon a search warrant. A copy of any search warrant and the results of the physical body cavity search shall be included with the related reports and made available, upon request, to the individual or authorized representative (except for those portions of the warrant ordered sealed by a court). While waiting approval for the search, the individual to be searched shall be restrained and isolated from other persons in custody, and shall be under constant visual observation by a sworn member.

(b) A physical body cavity search shall be conducted either by or under the supervision of a physician.

Copyright Lexipol, LLC 2018/03/15, All Rights Reserved.
Published with permission by Cook County Court Services
Department

(c) Except for the physician conducting the search, persons present must be of the same sex as the individual being searched. Only the necessary sworn members needed to maintain the safety and security of the medical personnel shall be present.

(d) Privacy requirements, including restricted touching of body parts and sanitary condition requirements, are the same as required for a strip search.

(e) All such searches shall be documented by a supervisor, including:

1. The facts that led to the decision to perform a physical body cavity search of the individual.

2. The reasons less intrusive methods of searching were not used or were insufficient.

3. The watch commander's approval.

4. A copy of the search warrant.

5. The time, date and location of the search.

6. The medical personnel present.

7. The names, sex and roles of any Sheriff's Office members present.

8. Any contraband or weapons discovered by the search.

(f) A copy of the written authorization (e.g., search warrant) shall be retained and shall be provided to the individual who was searched or other authorized representative upon request.

## 1001.7 TRAINING

The Executive Director of the Training Academy shall ensure members have training that includes (28 CFR 115.115):

(a) Conducting searches of cross-gender individuals.

(b) Conducting searches of transgender and intersex individuals.

(c) Conducting searches in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs.

# Video Surveillance System

### 138.1 PURPOSE AND SCOPE
This policy establishes the guidelines governing access to the Cook County Sheriff's Office (CCSO) Video Surveillance System (VSS) and the procedures for requesting, reviewing, downloading, storage and retention of video footage.

### 138.2 POLICY
It is the policy of the CCSO to use video surveillance to enhance security in and around the Cook County Department of Corrections (CCDOC), County courthouses, and other County or CCSO operated facilities and to capture and retain video footage involving CCSO staff, detainees, members of the public, while at County or CCSO operated facilities. Video surveillance will be captured and maintained for 30 days. Incidents identified and captured on video should be copied and retained according to established state or federal law.

The CCSO is committed to the retention of video when such retention is required pursuant to CCSO policies, procedures and state and federal law. The Video Monitoring Unit (VMU) is the sole source for the retention of requested video. Destruction of video retained from the VSS must be completed in accordance with the CCSO's obligations under the Local Records Act (50 ILCS 205) and any applicable state or federal law. Any retained video knowingly destroyed in violation of the CCSO's obligation under the Local Records Act is strictly prohibited and against the policy of the CCSO. Video surveillance footage will be limited to legal uses including, but not limited to subpoena, management review, and investigations, as determined by applicable state and federal law.

The unauthorized requesting, copying, retention, distribution, dissemination or destruction of video footage captured by the VSS or retained by the VMU is strictly prohibited and may result in disciplinary action up to and including termination and shall expose the member to criminal prosecution.

### 138.3 VIDEO SURVEILLANCE SYSTEM ACCESS LEVELS
The Sheriff's Bureau of Information Technology (BOIT) shall maintain a listing of VSS access levels. Access level will be assigned based on the specific locations being viewed by cameras connected to the system. Any changes to the access level list shall only be initiated by a request from a department head or the authorized designee using the CCSO Video Surveillance System Request/Change Form with the approval of the Undersheriff or the authorized designee for any levels above Level 3. The access levels are as follows:

(a) Level 1 Access - This level is assigned to all sworn members as well as non-sworn members requiring access as provided and indicated above. The user with this level will be able to view live video feeds while on duty and using the VSS in the designated posts in which they are assigned and on duty. In addition, this level will also be able to utilize an emergency review function which allows the member to review up to the previous five minutes of video on cameras under his/her control. This level does not

**EXHIBIT C**

allow any control of the VSS other than temporary movement of a camera equipped with the ability to pan, tilt, and/or zoom.

(b)  Level 2 Access - This level will be assigned to users upon the approval of the respective department head or the authorized designee. The user with this level shall have all the features of Level 1 access as well as the ability to view live video from any camera within the specific division/district of assignment, as well as review video from the previous 30 days specific to the division/district of assignment only. For example, a lieutenant assigned to Skokie Courthouse who has Level 2 access would have access to video from all cameras in the Skokie Courthouse only.

(c)  Level 3 Access - This level will be assigned to users upon the request from the respective department head or the authorized designee and the approval of the Undersheriff or the authorized designee. A user with this level will have all the features of Level 1 and 2 access as well as the ability to view live video from any camera within the department of assignment, as well as review all video from the previous 30 days from cameras within the department of assignment. For example, an individual with Level 3 access assigned to the CCDOC will have access to video from cameras in all divisions and CCDOC campus exterior cameras only.

(d)  Level 4 Access - This level will be assigned to users upon the request from a department head or authorized designee and the approval of the Undersheriff or the authorized designee. The user with this level will have all the features of Level 1, 2 and 3 access as well as have the ability to view live video from any camera and review all video from the previous 30 days from all CCSO locations.

(e)  Level 5 Access - This level is assigned to users assigned to the Video Monitoring Unit (VMU) or investigators who have been trained and allowed this level of access upon approval by the Bureau Chief of the BOIT, or other such approval granted by the Undersheriff or the authorized designee. In addition to having all of the features associated with Level 1, 2, 3 and 4 access, the individuals assigned to this level will be responsible for saving, copying and burning video data and/or maintaining the database of all video data required to be saved by the CCSO. This level will also require these designated users to be fully trained on all capabilities of the VSS, including but not limited to viewing, recording, downloading, saving, using video analytics, indexing, storage, and the evidence rules associated with the duties and responsibilities associated with this level of assignment. This level of access shall also direct the technical repair and adjustment of cameras and equipment used for the VSS as well as the interface with the repair contractors or internal technicians tasked with the maintenance of the VSS.

(f)  Level 6 Access - This level is assigned to the BOIT Bureau Chief or the authorized designee. This level allows for the ability to change access levels upon the signed approval of the Undersheriff or the authorized designee.

## 138.4  INVENTORYING AND/OR REQUESTING SURVEILLANCE VIDEO FOOTAGE

(a)  Inventorying of VSS Footage

## Video Surveillance System

1. The VMU shall save, copy, burn to a disc and inventory all video recorded incidents identified by a CCDOC incident number/CCSO Case Report (CR) number.

2. For incidents that do not have a CCDOC incident number/CCSO CR number, the authorized requester shall complete and submit the CCSO Request for Hold of Video Surveillance Form. Exceptions to using the form shall only be authorized by the VMU, and a record must be kept by the VMU of any exceptions made.

(b) Authorized Requesters

1. Requests to copy or permanently burn VSS footage to disk (or other storage media as authorized by the BOIT) will only be honored by the VMU if the request is made by a CCSO department head or any of the following individuals:

   (a) CCDOC: Superintendents and above; CCDOC CIID Investigators and above; Cook County Sheriff's Police Department (CCSPD) CIID Investigators and above; or CCDOC Compliance Office.

   (b) Court Service Department (CSD): Assistant Chiefs and above

   (c) Legal Office: Assistant General Counsel and above; legal staff under the direction of Assistant General Counsel.

   (d) Office of Professional Review (OPR): Investigators and above.

   (e) Sheriff's Executive Office.

   (f) Sheriff's Inspection Unit (SIU): Investigators and above.

   (g) Sheriff's Office Intelligence Center (SOIC): Sergeants and above.

   (h) Use of Force Review Unit: Investigators and above.

2. No outside agency or individual request will be processed unless the request has been received by the General Counsel and approved by a member of the Sheriff's Legal Department.

(c) Procedures For Requesting Video Surveillance Footage

1. Only authorized individuals may request VSS footage from the VMU.

2. Members who cannot request video are nevertheless obligated to bring to the attention of their supervisors any incident that may have been videotaped. The supervisor shall then ensure that an authorized requestor requests that any video be saved.

3. Requests should be made as soon as possible due to the fact that VSS footage is purged after 30 days.

4. Requests for VSS footage, including standard and emergency requests, will only be accepted through the VMU group email at CCSO.VMU@cookcountyil.gov unless an exception is authorized by the VMU and properly documented by the VMU. A CCSO Request for Hold of Video Surveillance Form must be attached to the email and accompany any requests.

Copyright Lexipol, LLC 2018/03/15, All Rights Reserved.
Published with permission by Cook County Court Services

5. Emergency requests for VSS footage must be made prior to the 29th day following the event and shall be completed by the VMU within 24 hours of receipt. Standard requests must be submitted within the first 22 days following the event and shall be completed by the VMU within seven days of receipt.

(d) Retrieving Video Surveillance Footage

1. Only individuals with Level 5 access may copy and burn VSS footage to disk or any other electronic medium.

2. The assigned VMU authorized staff member will retrieve the requested incident video from all available camera angles for the incident timeframe.

3. Copies of VSS footage may only be turned over to the authorized requestor(s).

4. Unless a specific timeframe is requested, the VMU will copy video from the incident timeframe plus 15 minutes before and after the incident time. The VMU will copy video from the incident timeframe plus 24 hours before and one hour after the incident time for incidents involving the death or serious suicide attempt of an inmate.

5. Any approved request for video from an outside agency or individual made within five days of the automatic erasure of the video requested will require that the video be retained and held until approval by the Legal Department for dissemination. This requirement applies only to video reasonably identifiable as to time and place.

6. Video will be downloaded in the VSS's native format and labeled as original onto digital removable media.

7. Any requested copies will be made from the original and converted as needed for ease of viewing.

8. It shall be the standard recording policy to record these images in as high a quality as the camera is capable of recording, and using no less than three frames per second for analog and 15 frames per second for digital, unless storage space allows for more.

9. In the event the back log is greater than seven days for requested videos, the VMU shall report the back log to the Bureau Chief of the BOIT.

## 138.5  ACCESS, AUDITS AND MONITORING

(a) Members shall only be allowed to monitor the VSS in accordance with their assigned access levels.

(b) Each member is required to log into the system using his/her unique username and password issued by the CCSO.

(c) Members are prohibited from viewing video or using the VSS outside of their assigned job duties.

(d) No member, other than an assigned VMU member may copy, record, disseminate, or burn video at any time.

Copyright Lexipol, LLC 2018/03/15, All Rights Reserved.
Published with permission by Cook County Court Services
Department

(e) Unless responding to a specific internal request for video by an authorized requester, members are prohibited from distributing copied or burned video to parties outside of the CCSO unless approved by the General Counsel.

(f) Members are reminded that the VSS auto-generates an audit trail for every action attempted within the system. This audit trail, and especially the record of download video, shall be reviewed by OPR on a monthly basis.

(g) Members shall report in writing to their direct supervisor all unauthorized use of the VSS or unauthorized copying, recording, burning, dissemination, or viewing of videos.

(h) Respective unit heads are responsible for inspecting all cameras (e.g., view, angle, clarity of picture, obstructions) assigned to the respective unit, at a minimum of at least once a week.

(i) In the event a camera becomes inoperable or there are technical issues (e.g., views, viewing quality, image quality, lighting), the respective unit head shall promptly notify the BOIT Help Desk at CCSO.HelpDesk@cookcountyil.gov upon identifying such issues. In addition, an email shall also be sent to the VMU group email at CCSO.VMU@cookcountyil.gov to provide notice of the issue(s) and verification that an email was sent to the BOIT Help Desk.

(j) The CCSO may, at its discretion and without notice, monitor or audit member use of the VSS at any time for training and safety purposes.

(k) Department heads shall ensure that if a member with Level 2 access or above is transferred, deceased, separated, resigns, retires or is on a leave of absence for more than 180 days, or any other long term absence from the CCSO, a timely notification shall be made to the Bureau Chief of BOIT.

(l) The BOIT shall maintain a current list of member access levels. Twice a year, the Bureau Chief of the BOIT or the authorized designee and the respective department head or the authorized designee shall audit member access level lists to ensure accuracy.

(m) All approved requests made by a department head or the authorized designee for Level 2 access must be done on the CCSO Video Surveillance System Access Request/Change Form, and emailed to the BOIT at CCSO.Security@cookcountyil.gov. Additionally, any requests for Level 3 access and above require approval from both the department head or the authorized designee and the Undersheriff or the authorized designee, and are to be submitted via email to the BOIT using the CCSO Video Surveillance System Access Request/Change Form.

(n) CCSO department heads or the authorized designees may request an audit of a member's use of the VSS by submitting a written memorandum, which must include the basis for the request, to the BOIT at  CCSO.Security@cookcountyil.gov  .

(o) Violations of this policy may result in the following actions, including but not limited to:

1. Temporary or permanent loss of surveillance privileges;

2. Counseling;

3. Summary Punishment/Discipline,

4. Referral to OPR for investigation,

5. Referral for criminal prosecution; and/or

6. Termination of employment.

(p) A monthly report issued by the VMU of the VSS indicating incident requests, video quality, maintenance issues, number of various requests, and other such pertinent data will be summarized in no more than a two-page memo and provided to the Undersheriff by the fifth day of the preceding month.

Copyright Lexipol, LLC 2018/03/15, All Rights Reserved.