IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ELIZABETH ALICEA**, **MICHELLE URRUTIA**, **KATINA RAMOS**, and **JACK ARTINIAN**, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) No. 18 cv 05381<br>) |
| v. | ) Honorable Ronald A. Guzman<br>) Magistrate Judge Maria Valdez |
| **COUNTY OF COOK**, and **THOMAS J. DART**, individually, and in his official capacity as Sheriff of Cook County, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF THE MOTION FOR CLASS CERTIFICATION,
PURSUANT TO THE COURT'S JULY 24, 2019 ORDER**

Thomas A. Zimmerman, Jr.
Sharon A. Harris
Matthew C. De Re
Nickolas J. Hagman
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile

*Counsel for the Plaintiffs and Putative Class*

Pursuant to the Court's July 24, 2019 order (Dkt # 115, the "Order"), Plaintiffs hereby provide the following plan ("Plan") as to how class members will be identified and notified. In short, the Plan consists of the following four phases: (1) a first round of notice to all *potential* Class members of this lawsuit, which gives potential Class members the ability to opt-out of the Class; (2) merits and expert discovery, dispositive motions, and a trial to determine Defendants' liability, the scope of the Class, and Plaintiffs' and Class members' "general damages;" (3) a second round of notice to all Class members whereby Class members may submit a claim to collect general damages, and assert a claim for "special damages;" and (4) proceedings to determine the amount of any Class members' claimed special damages.[1] The practicability of this Plan, and the precise details of each of its stages, are discussed below. Plaintiffs also offer several alternatives to this Plan in Section V, *infra*.

I.  **All *Potential* Class Members Can Be Notified Using A Robust Notice Plan.**

Rule 23(c)(2)(B) requires that notice be given to potential class members in the best manner that is practicable under the circumstances. When the addresses of potential class members are not known or cannot be obtained through reasonable efforts (as in this case), then individual notice—*i.e.*, direct mail or email notice—is not required, and notice may be accomplished through publication or other means that are able to reach the potential class members. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (". . . courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process.") (internal citations omitted).

---

[1] If judgment is rendered in favor of Defendants after Phase (2) of the Plan, the final two phases would be unnecessary. Similarly, if no Class members assert a claim for special damages after Phase (3) of the Plan, then Phase (4) would be unnecessary.

Here, although Defendants do not have Class members' addresses, a constitutionally sufficient notice plan has been developed using publication and other forms of notice, similar to "publication-only" notice plans approved in other cases. *See, e.g.*, preliminary approval order from *In re Sonic Corp. Customer Data Breach Litig.*, Case No. 17-md-02807 (N.D. Ohio), Dkt. # 145, ¶ 9, attached hereto as Exhibit 9. In this case, notice will be provided to all *potential* Class members in a manner similar to the notice plan that was used in the *Sonic Data Breach* and *In re Nassau County Strip Search* cases, but tailored to the needs of this case. *See Nassau County*, Dkt. ## 141, 142, 153.[2] Towards that end, Plaintiffs' counsel asked Kurtzman Carson Consultants LLC ("KCC")—a class action services company that designs class notice plans and has administered over 6,000 class action settlements—to develop an appropriate notice plan designed to reach the *potential* Class members in this case.

According to KCC, an appropriate notice plan that comports with Fed. R. Civ. P. 23(c)(2)(B) and due process would include the following: (1) publishing notice in the *Chicago Tribune* newspaper; (2) posting notice in places frequented by Class members, *e.g.*, the Cook County courthouses (such as in the public areas, outside the criminal courtrooms, and in the Holding Cells) and the Cook County jail (such as in the commissary, law library, and housing areas); (3) providing digital notice via internet banner advertisements and on Google, Facebook, and other social media platforms; (4) distributing notice to the Chicago Bar Association, Northwest Bar Association, and Cook County Public Defender's Office to be distributed to

---

[2] In *Nassau County*, the defendants agreed with plaintiffs' proposal to publish notice regarding the class action, and post notice in various County facilities and on the County website. *See Nassau County,* Dkt. ## 141, 142, 153. Specifically, plaintiffs proposed that the notice be published in various media and conspicuously posted at public facilities in the County, including but not limited to the Correctional Center (the public areas, the booking area, law library, and housing areas), the Family Court Unit of the Sheriff's Office, the Nassau County police precincts, and the Offices of the County Executive, County Clerk, District Attorney, County Attorney, and Commission of Human Rights. *See* Dkt. # 141; *see also Bynum v. Gov't of D.C.*, 384 F.Supp.2d 342, 346 (D.D.C. 2005) (providing that the defendant shall post the Class Notice regarding the settlement of a strip search case on each Unit of the D.C. Jail and the Correctional Treatment Facility).

criminal defense attorneys; (5) providing direct notice to Class members held in the Cook County jail; and (6) posting notice with a link to the case website on Defendants' websites. *See* Declaration of Carla Peak Regarding Class Certification Notice Plan, ¶¶ 7-8, attached hereto as Exhibit 1. KCC would also establish a website that would include pertinent case documents, Court orders, and photographs of the Holding Cells wherein any part of the toilet is visible in the camera feed monitoring the cell. *See* Dkt. # 113-1. Individuals could view those photographs to determine whether they are Class members (*i.e.*, whether they used a toilet in one of those Holding Cells). The website would also list frequently asked questions and answers, and contain a form to allow individuals to exclude themselves from the Class. *See* Exclusion Request Form, attached hereto as Exhibit 2. KCC would also establish and monitor a case P.O. Box, and a toll-free telephone number to allow Class members to learn more about this case. *See* Exhibit 1, ¶¶ 11-17.

The notice plan developed by KCC is reasonably calculated under the circumstances to apprise interested parties of the pendency of this action and afford them an opportunity to exclude themselves from the Class. KCC expects that the digital notice alone will reach 70% of likely Class members, which is considered to be a "high percentage" and reasonable, but the overall reach will be greater than that in light of the additional notice efforts. *See* Exhibit 1, ¶¶ 8-9 (citing the Federal Judicial Center *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*). This is consistent with the testimony of several of Defendants' employees, who indicated that approximately 74% of Pretrial Detainees are held in the Cook County jail because they could not post bond,[3] and therefore would see the Cook County jail notice described above.

---

[3] *See* Dkt. #111-4, Milazzo Dep., pp. 57-58; Dkt. #111-5, Sajdak Dep., pp. 89-91; Dkt. #111-6, Mills Dep., pp. 101-02.

3

Because the Sheriff has limited contact information for Pretrial Detainees, the aforementioned notice plan is the most practicable under the circumstances. By casting a wide net relative to this first round of notice, the Court can be assured that any *potential* Class members who wish to exclude themselves from the Class are able to do so.[4]

## II. The Court Can Certify A Class On The Issues Of Liability And General Damages For The Unreasonable Search And Intrusion Upon Seclusion Claims.

While notice to the Class is being disseminated, the parties would be engaging in merits fact discovery and expert witness discovery. The parties may present experts regarding the liability issues for each claim. The parties may also present experts on general damages and the injury to human dignity from monitoring Class members using the toilet. *See*, *e.g.*, *Nassau County*, Dkt. # 182, Plaintiffs' Expert Witness Report.

As explained below, the case would then proceed to trial on the issue of Defendants' liability and general damages for both claims. Special damages related to both claims would be bifurcated and addressed after the liability and general damages phase. *See* Section IV, *infra*.

### A. Defendants' Liability.

Plaintiffs' and Class members' unreasonable search claim relates to whether the Sheriff had a policy or practice of recording Pretrial Detainees using the toilet in Cook County courthouse Holding Cells; whether Pretrial Detainees had a legitimate expectation of privacy while they are using the toilet in the Holding Cells; and whether the Sheriff's use of the recording devices constitutes an unreasonable search. *See* Order, Dkt. # 115. Plaintiffs' and Class members' intrusion upon seclusion claim relates to whether the Sheriff had a policy or practice

---

[4] Even though it is possible that some *potential* Class members who receive this first round notice are ultimately determined to not be members of the Class, there is no harm to giving them notice because, at worst, a potential Class member would be excluding himself from a Class that he was not a member of. *See Stuart v. State Farm Fire & Casualty Co.*, Case No. 14-cv-4001, 2019 WL 2427956, *4 (W.D. Ark. June 10, 2019) (approving the notice plan and noting "the fact that it is overinclusive is not a relevant consideration.") (internal quotation omitted).

4

of recording Pretrial Detainees using the toilet in Cook County courthouse Holding Cells; whether the use of the cameras constitutes an unauthorized intrusion into seclusion; whether the intrusion is offensive or objectionable to a reasonable person; and whether the matter intruded upon was private. *See* Order, Dkt. # 115.

The testimony and evidence pertaining to liability for Plaintiffs' and Class members' unreasonable search claim would significantly overlap with the testimony and evidence pertaining to liability for their intrusion upon seclusion claim. For example, regardless of the claim, identical testimony and evidence would be used for the jury's determination of whether the Sheriff had a policy or practice of recording Pretrial Detainees while they are using the toilet in the Holding Cells. Additionally, the evidence related to whether Pretrial Detainees have a legitimate expectation of privacy while they are using the toilet in the Holding Cells significantly overlaps with the determination of whether Pretrial Detainees are secluded in the toilet area in Holding Cells and whether the matter intruded upon was private—two elements of Plaintiffs' intrusion upon seclusion claim. The evidence that would be used at a trial on liability would include the photographs of the subject Holding Cells (*see* Dkt. # 113-1), Defendants' written policies related to viewing Pretrial Detainees' genitals or when using the toilet (*see* Dkt. ## 111-11, 113-2), and testimony from Defendants' employees and Class members. The parties would also use the video recording equipment (after hours) to record a volunteer acting out the use of the toilet in each Holding Cell at issue, and the jury would view the demonstrative video to understand which parts of the human body would be visible in the camera feeds.[5]

Moreover, the jury would also make a determination of which Holding Cells are included in the Class definition, *i.e.*, which Holding Cells have a toilet that is visible in the camera feed

---

[5] This is similar to the *Nassau County* case, where the factfinder viewed photographs of the strip search areas and a demonstrative video of a strip search being performed. *See* Revised Joint Pretrial Order in Case No. 99-cv-2844, Oct. 23, 2009, Dkt. #247, attached hereto as <u>Exhibit 3</u>.

5

monitoring the cell, such that the Sheriff's recording of a person using that toilet would constitute an unreasonable search and/or intrusion upon seclusion. As such, a single trial on liability for both claims is appropriate because the claims and evidence overlap significantly.

### B. General Damages.

General damages in the context of the instant case include the presumed injury to human dignity resulting from Defendants' common practice of recording Pretrial Detainees using the toilet, and those damages that are inseparable from the violation itself.[6] *See Nassau County*, Dkt. # 128, 2008 WL 850268, *5 (E.D.N.Y. Mar. 27, 2008), attached hereto as Exhibit 4 (stating that "general damage is a harm of a sort inseparable from [the violation]" and that, "at the very least, class members are entitled to general damages.") (quoting *Raysor v. Port Authority*, 768 F.2d 34 (2nd Cir. 1985)). General damages (or nominal damages) are available for both the unreasonable search and intrusion upon seclusion claims.

Relative to Plaintiffs' and Class members' unreasonable search claim (*i.e.*, Fourth Amendment claim), the Seventh Circuit has repeatedly affirmed that general damages (or nominal damages) are available for Section 1983 claims involving invasions of constitutional rights, including those arising under the Fourth Amendment. *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007) (citing, *inter alia*, *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003); *Ainsworth v. Century Supply Co.*, 295 Ill.App.3d 644, 649-50 (2nd Dist. 1998)); *Briggs v. Marshall*, 93 F.3d 355, 360

---

[6] This is in contrast to special damages—harms that "include emotional distress damages beyond those that are inseparable from the injury to human dignity, as well as more severe psychological damage, which might require expert testimony to prove"—that may not be able to be determined on a classwide basis. However, the existence of special damages does not prevent certification and classwide resolution of the common issues involved in this action. *See, e.g.*, Exhibit 4, *Nassau County*, 2008 WL 850268, *6 (E.D.N.Y. Mar. 27, 2008); *Conyers v. City of Chicago*, 2017 WL 4310511, *5 (granting certification because "nominal damages are not compensation for loss or injury, but rather recognition of a violation of rights . . . and the Seventh Circuit has repeatedly held that the need for individualized damages determinations does not defeat class certification."). Plaintiffs' Plan relative to the determination of Class members' special damages is discussed in Section IV, *infra*.

(7th Cir. 1996) (allowing recovery of nominal damages for a Fourth Amendment claim); *Martin v. Marinez*, 2019 WL 3773761, at *9 (7th Cir. 2019) ("Here, the right in question is [the plaintiff's] Fourth Amendment right not to be stopped by officers without reasonable suspicion. That right was vindicated by the nominal damages the jury awarded.").

Nominal (or general) damages are also available relative to Plaintiffs' and Class members' intrusion upon seclusion claim. Specifically, Section 652H of the Second Restatement of Torts—upon which Illinois courts rely—states that "one who has established a cause of action for invasion of his privacy is entitled to recover damages for (a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and (c) special damage of which the invasion is a legal cause." Since Section 652H(a) provides for recovery relative to an invasion of an individual's "interest in privacy," on its own, courts around the country have interpreted that paragraph to provide for nominal damages. *E.g.*, *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F.Supp.2d 968, 977 (N.D. Ohio 2008) (citing Restatement (Second) of Torts § 652H for the proposition that "if a plaintiff successfully pleads and proves an unjustified intrusion into privacy, he is entitled to nominal damages, as well as actual and punitive damages if the plaintiff proves such damages are appropriate"); *Fawcett v. Grosu*, 498 S.W.3d 650, 664 (Tex. App. 2016) ("This intrusion itself is actionable, and the plaintiff can receive at least nominal damages for that actionable intrusion without demonstrating physical detriment."); *see also*, 62A Am. Jur. 2d Privacy § 214 ("Where a plaintiff claims intrusion upon seclusion, the plaintiff can receive at least nominal damages for an actionable intrusion without demonstrating physical detriment.").[7]

---

[7] Although *Schmidt v. Ameritech Illinois* held that "injury is not presumed" relative to intrusion upon seclusion claims, that pronouncement came in relation to recovery under Section 652H(b) and does not

Because general damages are inseparable from the violation, general damages can be determined on a classwide, per instance basis. *See e.g.*, *Nassau County*, 742 F.Supp.2d 304, 331 (E.D.N.Y. 2010) (determining general damages resulting from the unreasonable search of $500 per search); *Barnes v. District of Columbia*, 278 F.R.D. 14, 20-21 (D.C. Cir. 2011) (approving a trial plan for determining general damages for strip searches); *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 614-15 (N.D. Ill. 2009) (certifying a class of former pretrial detainees because "cases involving nominal damages are especially well-suited to resolution by class action," and that class members are "entitled to an award of nominal damages even if they cannot prove actual physical or emotional injury.").

For example, in the *Nassau County* case, the plaintiffs brought a claim alleging that the defendants conducted unreasonable strip searches in violation of § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and a violation of the New York State Constitution. *See Nassau County*, 639 Fed.Appx. 746, 748 (2nd Cir. 2016). The *Nassau County* court certified the class under Fed. R. Civ. P. 23(b)(3) for both liability and general damages. See <u>Exhibit 4</u>. The *Nassau County* court held general damages are presumed and can be determined on a classwide basis because "…once an illegal strip search is shown to have taken place, *a fortiori* there is injury to human dignity." *See* <u>Exhibit 4</u>, p.8. The court noted "…it cannot be disputed that the violation at issue—the strip search—resulted in some injury to the class members." *See id.*, p.10. The court held that damages for this common injury to human dignity can be determined on a classwide basis, *see id.*, pp.12-13, and the case went to trial on

---

apply to intrusion upon seclusion claims generally. *Schmidt v. Ameritech Illinois*, 329 Ill.App.3d 1020, 1035 (1st Dist. 2002) (citing Restatement (Second) of Torts § 652H(b); *Gibson v. Philip Morris, Inc.*, 292 Ill.App.3d 267, 279 (5th Dist. 1997)). Put another way, in light of the citation to Section 652H(b) and *Gibson*—which concerned the sufficiency of evidence relative to damages related to "mental anguish"—*Schmidt* only stands for the proposition that when a plaintiff seeks recovery of emotional damages, *in addition to* (or instead of) damages arising from the invasion of privacy itself, those emotional damages must be adequately proven and are not merely presumed.

8

the issue of general damages for the Class (the defendants conceded liability). As stated by the court, general damages include the "shared emotional injuries presumed to flow from the affront to human dignity." *See* Memorandum and Order, Case No. 99-cv-2844, Dkt. # 390, 819 F.Supp.2d 153, 161 (E.D.N.Y. Oct. 19, 2011), attached hereto as Exhibit 5, p.12.

For the general damages trial in the *Nassau County* case, the court allowed each party to call up to 10 fact witnesses from the class to testify concerning the details of the search without any information concerning the effect that the search had upon them, as well as any expert witnesses. *See Nassau County*, Case No. 99-cv-2844, Dkt. # 146, 2009 WL 706252 (E.D.N.Y. Mar. 16, 2009), attached hereto as Exhibit 6, pp.5-7. The limited information was sufficient for the jury to understand what had occurred, such that the jury could determine the appropriate amount of general damages that each class member sustained for the presumed common injury to human dignity. *See id.*

Here, the evidence that would be introduced relative to general damages would consist of photographs of the subject Holding Cells (*see* Dkt. # 113-1), testimony from Defendants' employees and Class members, and expert testimony. Further, as stated above, the jury would also be shown a demonstrative video of a volunteer acting out the use of the toilet in each Holding Cell at issue to understand which parts of the human body would be visible in the camera feeds. *See* Exhibit 3 (permitting the use of photographs of the strip search areas and a demonstrative video of a strip search being performed to determine general damages).

Because the testimony and evidence pertaining to the general damages would overlap significantly with the testimony and evidence related to Defendants' liability, a single trial should be used to establish both liability and general damages. As such, like liability, general

9

damages relative to both claims can be determined on a classwide basis, and certification under Rule 23(b)(3) is appropriate for both claims.[8]

### III. The Claims Process After A Determination Of Liability And General Damages.

If the jury returns a verdict in favor of the Class on the issue of Defendants' liability and general damages for either or both claims, a second round of notice would be disseminated to the Class by KCC. The notice would be similar to the notice used following the trial in the *Nassau County* case, and would advise Class members of the jury's liability and general damages determination, identify which Holding Cells the jury found to be at issue,[9] provide instructions on how they can file a claim for general damages, and detail the procedures for asserting a claim for special damages.

Using that information, Class members will be able to fill-out a Claim Form indicating which Holding Cells in which Cook County courthouses they were placed, when they were placed in the Holding Cell(s), and that they used the toilet in the Holding Cell(s). *See* sample Claim Form, attached hereto as Exhibit 7. The Claim Form would also allow Class members to indicate whether they intend to seek special damages. *Id.*

Class members can view the photographs showing the camera view of each subject Holding Cell (*see* Dkt. # 113-1) before indicating which Holding Cell(s) they were in, and then submit an "affidavit" (*i.e.*, a Claim Form signed under penalty of perjury) to "self-identify" that they used a toilet in one of those Holding Cells. *Mullins*, 795 F.3d at 669-71 (holding that class

---

[8] It should also be noted that a trial may be unnecessary, if the Court were to determine Defendants' liability as a matter of law. For example, in *Nassau County*, after remand from the Second Circuit Court of Appeals, the District Court granted class certification for liability purposes, ordered that summary judgment on liability for all strip searches upon initial admission to the facility be granted against defendants and in favor of the certified class, and thereafter, certified a damages class. *See* Exhibit 3. After a bench trial, the Court determined that each Class member was entitled to $500 in general damages for each strip search. *Augustin v. Jablonsky*, 819 F.Supp.2d 153, 158 (E.D.N.Y. 2011).

[9] The case website established by KCC would be modified to add pertinent case documents and Court orders, and remove any photographs of Holding Cells that the jury did *not* find to be at issue in this case.

members may submit self-identifying affidavits); *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018) (same).

Self-identified Class membership will be confirmed by the claims administrator using information provided by Defendants. Specifically, Defendants maintain a database that contains Pretrial Detainees' first and last names, the courthouses and courtrooms they were brought to, and the dates and times of the court appearances. *See* list of August 2016 Pretrial Detainees, Dkt. # 92-1. During discovery, Defendants generated and produced a report that contains the foregoing database information for more than 16,500 Pretrial Detainees who had a court hearing in August 2016, and that report can be expanded to encompass a complete list of *all* Pretrial Detainees who were brought to a Cook County courthouse throughout the entire Class Period. *See Defendants' Response to Plaintiffs' Motion to Compel and for Miscellaneous Relief*, Dkt. # 81, pp.4-5 (stating that the list compiled by Defendants includes *all* "pre-trial detainees who were kept in the holding areas"). Thus, the parties (and the claims administrator) would have a complete list of all Class members.

This list would permit the claims administrator to quickly and easily confirm the identity of Class members and weed out fraudulent claims. If a claimant's name is not included in the list, then the claimant cannot possibly be a member of the Class. Moreover, because the list includes the dates and courthouses for each claimant's court appearance(s), the administrator can also use the compiled list to verify that the claimant was in the courthouse at the time stated on the Claim Form.

During discovery, Defendants identified whether the specific Holding Cells typically hold male or female Pretrial Detainees.[10] The claims administrator can use that information to

---

[10] *See, e.g.,* Dkt. #111-4, Milazzo Dep., 17:22-31:24; Dkt. #111-5, Sajdak Dep., 10:11-19:24; Dkt. #111-6, Mills Dep., 34:3-53:9.

11

verify that the Holding Cell(s) selected by a claimant in the Claim Form actually held Pretrial Detainees of the same gender as the claimant. As such, potential Class members can easily be identified, and the veracity of their claims can be independently determined by the administrator.

## IV. The Determination Of Special Damages.

As noted above, Class members will be able to indicate on the Claim Form that they intend to seek special damages. *See* Exhibit 7. "'Special damages' commonly include physical discomfort, shock or injury to health, loss of employment and injury to the plaintiff's reputation or credit and must be specifically pleaded and proven." *See* Exhibit 4, p.10, (quoting *Kerman v. City of New York*, 374 F.3d 93, 125 (2nd Cir. 2004)). To the extent that an individual sustained special damages, the *Nassau County* court ruled that those items may be pursued during the special damages portion of the proceeding to be held at a later stage in the litigation. *See* Exhibit 6, p.7. There are two methods of addressing special damages: referral to one or more Special Masters, or decertification after the liability and general damages phase.

### A. Use Of A Special Master.

Under the Special Master method, the Court would appoint one or more Special Masters to determine each Class member's special damages. This approach was used in *Wilkins v. Just Energy Group, Inc.*, Case No. 13-cv-05806 (N.D. Ill.). In that case, individual class members submitted forms related to their individual damages. *See Just Energy*, Case No. 13-cv-05806, Dkt. # 214, pp.3-4, attached hereto as Exhibit 8. The attorneys for each side conferred to see if they could agree on individualized damages without the need for a hearing. *See id.*, p.4. If the parties could not reach a settlement, then the parties submitted the claim to the Special Master, who reviewed the evidence and heard testimony related to the individual damages. *See id.*, pp.4-5. The Special Master then rendered a verdict on the amount of damages to which the individual

12

was entitled. *See id.* Of note, over 97% of the claims for individual damages were resolved without proceeding to a hearing before the Special Master. *See id.*, p.4.

In this case, one or more Special Masters could be appointed to determine individual special damages. Similar to *Just Energy*, the claims administrator will send a second form to all Class members who noted in their Claim Form that they have special damages. Those Class members would then submit any documents to support their claim for special damages. The parties would confer to see if a settlement could be reached. If settlement was not possible, then the claim would proceed to a Special Master who would review each Class member's documents, hear testimony from the Class member, and consider any counter-evidence from Defendants.

The advantages of the Special Master method are plenty. The parties will have already agreed to the standardized forms and types of special damages at issue. Class members seeking special damages need only submit documents to Class Counsel to initiate the proceeding within the umbrella of this case, instead of seeking a new attorney to file a separate case to recover special damages if the Court were to decertify the Class for special damages.

Moreover, the Special Master method would eliminate any motion practice related to each individual's claim and streamline discovery related to the claim, as the claim would move directly to negotiation or determination based on the individual's documents and testimony. As such, directing special damages to a Special Master would save significant time and resources of the Class members, parties, and Court.

   **B.**  **Decertification After A Determination Of Liability And General Damages.**

Alternatively, the Court can certify the Class for liability and damages, and decertify for special damages at the conclusion of the liability and general damages phase. This approach was followed in *Nassau County*. In that case, after the defendants' liability and the class members'

general damages were determined, the court decertified the class, finding that questions of law or fact common to the class no longer predominate over the issue of each class member's special damages. *See* Exhibit 5, pp.15-16. The court declined to exercise its discretion to hold (or appoint one or more Special Masters to hold) a series of "mini-trials" to determine each class member's special damages. *See id.*, pp.37-38. Similarly, in *Myatt v. Fries*, the court decertified the class related to special damages because only 32 class members indicated that they had special damages. 2013 WL 3776480, *2 (N.D. Ind. July 17, 2013).

In this case, the Court should defer the decision on whether to appoint a Special Master or decertify the Class for special damages until after all Claim Forms are submitted for general damages. The Court can decide how to proceed based on the number of Class members who indicate in their Claim Form that they seek to recover special damages. If the Court decertifies the Class, Class members seeking special damages would receive notice to advise them of that ruling, advise them of their right to commence an individual action seeking special damages, and include information as to the statute of limitations for individual actions for that claim.

V.  **Other Alternatives To The Plan Articulated Above.**

Given the significant overlap between the testimony and evidence pertaining to liability and general damages for both claims, the issue of Defendants' liability and general damages on the intrusion upon seclusion claim should be tried along with the issue of Defendants' liability and general damages for the unreasonable search claim. *See* Section II, *supra*. Although Plaintiffs believe that the Plan articulated above would be the most efficient relative to the determination of the liability and damages issues in this case, there are several alternatives that the Court may consider.

14

First, if the Court determines that liability and general damages for both claims cannot be determined in one proceeding, the Court can bifurcate trials on liability and general damages.[11] *See, e.g.,* Exhibit 3, p.5; *Augustin*, 819 F.Supp.2d at 158 (awarding each Class member $500 in general damages for each strip search in a damages-only proceeding). Following the two trials, the Court could ascertain Class members' special damages using the procedures articulated in Section IV, *supra*. While this method is also efficient, it would add another step to the Plan articulated above, as it would require a second trial to determine general damages, which can easily be determined during the trial on Defendants' liability. *See* Section II, *supra*.

Second, if the Court determines that general damages are only available for the unreasonable search claim, such that Class members are required to prove actual injuries in order to recover for intrusion upon seclusion—*i.e.*, there are no general damages for this claim—the primary Plan articulated above could still be followed, with the exception that Class members would be required to perfect their intrusion upon seclusion claim through the Special Master procedures articulated in Section IV-A, *supra*.[12] Under this option, the Class would be certified as to liability and damages for both claims, and the trial would be held on the issue of Defendants' liability for both claims and general damages for the unreasonable search claim. However, Class members would not be able to recover damages relative to the intrusion upon seclusion claim *unless and until* they prove special damages. Special damages could be determined through the Special Master procedures articulated in Section IV-A, *supra*. If Class members could not prove special damages, then they would not recover anything for the intrusion upon seclusion claim, which is the functional equivalent of judgment being rendered in favor of Defendants on that claim because those Class members could not prove an element of

---

[11] This alternative to the Plan will be referred to as "Alternative #1."
[12] This alternative to the Plan will be referred to as "Alternative #2."

15

their claim (*i.e.*, actual damages). This option would preserve Class members' ability to recover general damages relative to the unreasonable search claim, while at the same time allowing Defendants to challenge the sufficiency of Class members' actual injuries necessary to establish their intrusion upon seclusion claim.[13]

Third, if the Court determines that there are no general damages for the intrusion upon seclusion claim and the Court is not inclined to certify a damages Class for that claim, the Court could certify a liability and damages Class relative to the unreasonable search claim, and a liability-only issue Class for the intrusion upon seclusion claim, pursuant to Rule 23(c)(4).[14] Rule 23(c)(4) permits the Court to certify a case as a class action "with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Issue certification is proper when common issues predominate only as to certain issues, but the case as a whole does not satisfy Rule 23(b)(3). *See Nassau County*, 461 F.3d at 226-27; *see also Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (stating that courts may certify classes as to liability, and hold separate hearings on individual damages); *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379-80 (7th Cir. 2015) (same).

This procedure would be similar to Alternative #2, with the exception that the special damages procedures articulated in Section IV, *supra*, would only apply to Class members' unreasonable search claim. The "issue" of Defendants' liability for the intrusion upon seclusion claim would be tried together with the unreasonable search claim. However, to recover *any* damages relative to the intrusion upon seclusion claim, Class members would be required to file a separate, individual lawsuit to prove their special damages, while relying on the liability

---

[13] Alternative #1 can also be combined with Alternative #2, to the extent that the Court believes it is appropriate to determine the issue of liability relative to both claims in one proceeding, then determine general damages relative to the unreasonable search claim in a second, bifurcated proceeding, and finally determine special damages relative to both claims in through the Special Master procedures articulated in Section IV-A, *supra*.

[14] This alternative to the Plan will be referred to as "Alternative #3."

determination in this case as *res judicata*. As with Alternative #2, this option would preserve Class members' ability to recover general damages relative to the unreasonable search claim, while still permitting Defendants to challenge the sufficiency of Class members' claimed actual injuries for their intrusion upon seclusion claim. But certifying an issue class for the intrusion upon seclusion claim would place an additional burden on the courts and Class members because it would require Class members to retain counsel, file a separate lawsuit against Defendants, and litigate the damages aspect of their intrusion upon seclusion claim.

Alternative #3 should only be employed if the Court determines that general damages are not available relative to the intrusion upon seclusion claim, and the Court is not inclined to certify a damages Class for that claim and allow Class members to prove their special damages through the Special Master procedures articulated in section IV-A, *supra*.

**VI. Conclusion.**

Based on the foregoing, the Court should certify the Class and employ the Plan (or, secondarily, one of the Alternatives) described herein.

        Plaintiffs ELIZABETH ALICEA, MICHELLE URRUTIA, KATINA RAMOS, and JACK ARTINIAN, individually, and on behalf of all others similarly situated,

By: /s/Thomas A. Zimmerman, Jr.
    Thomas A. Zimmerman, Jr. (IL #6231944)
    Sharon A. Harris (IL #6255704)
    Matthew C. De Re (IL #6317913)
    Nickolas J. Hagman (IL #6317689)
    ZIMMERMAN LAW OFFICES, P.C.
    77 West Washington Street, Suite 1220
    Chicago, Illinois 60602
    (312) 440-0020 telephone
    www.attorneyzim.com

Counsel for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he caused the above and foregoing *Plaintiffs' Supplemental Brief in Support of the Motion for Class Certification, Pursuant to the Court's July 24, 2019 Order* to be served upon counsel of record via the court's ECF system, on this day August 14, 2019.

s/ Thomas A. Zimmerman, Jr.