**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH ALICEA**, **MICHELLE URRUTIA**, **KATINA RAMOS**, and **JACK ARTINIAN**, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 cv 05381 |
| | ) | |
| v. | ) ) | Honorable Ronald A. Guzman Magistrate Judge Maria Valdez |
| **COUNTY OF COOK**, and **THOMAS J. DART**, individually, and in his official capacity as Sheriff of Cook County, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION

Thomas A. Zimmerman, Jr.
Sharon A. Harris
Matthew C. De Re
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile

*Counsel for the Plaintiffs and Putative Class*

## TABLE OF CONTENTS

I.      PROCEDURAL BACKGROUND……………………………………………...1

II.     FACTUAL BACKGROUND…………………………………………………3

III.    LEGAL STANDARD………………………………………………………… 4

IV.     ARGUMENT…………………………………………………………………5

      A.      Rule 23(a) Requirements……………………………………………...5

            1.      The Class is Sufficiently Numerous…………………………………5

            2.      Questions of Law or Fact Exist that are Common to the Class……...7

            3.      Plaintiffs' Claims Are Typical of the Class……………………………9

            4.      Plaintiffs Will Fairly and Adequately Represent the Class………….10

      B.      Rule 23(b)(3) Factors……………………………………………….... 11

            1.      Common Questions of Law or Fact Predominate……………………12

            2.      A Class Action is the Superior Method of Adjudicating the Claims...17

            3.      The Class is Ascertainable and Identifiable…………………………..18

      C.      Class Certification Should Be Decided Prior to a Ruling on the Merits…….20

V.      CONCLUSION…………………………………………………….........22

## TABLE OF AUTHORITIES

### Cases

*Adair v. Town of Cicero,*
  2018 WL 5112949 (N.D. Ill. 2018) ................................................................ passim

*Amati v. City of Woodstock, Ill.,*
  829 F.Supp. 998 (N.D. Ill. 1993) ........................................................................ 13

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................ 22

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,*
  133 S.Ct. 1184 (2013) .................................................................................... 5, 13

*Arnzen v. Palmer,*
  713 F.3d 369 (8th Cir. 2013) .............................................................................. 14

*Arreola v. Godinez,*
  546 F.3d 788 (7th Cir. 2008) .............................................................................. 12

*Beaton v. SpeedyPC Software,*
  907 F.3d 1018 (7th Cir. 2018) ............................................................... 2, 5, 16, 19

*Bell v. PNC Bank, Nat. Ass'n,*
  800 F.3d 360 (7th Cir. 2015) ..................................................................... 5, 8, 12

*Blades v. Monsanto Co.,*
  400 F.3d 562 (8th Cir. 2005) .............................................................................. 12

*Blihovde v. St. Croix County, Wis.,*
  219 F.R.D. 607 (W.D. Wis. 2003) ........................................................................ 8

*Bullock v. Sheahan,*
  225 F.R.D. 227 (N.D. Ill. 2004) .......................................................................... 14

*Buroff v. Gladieux,*
  No. 1:17-CV-124-TLS, 2018 WL 2277093 (N.D. Ind. May 17, 2018) ............ 11, 18

*Busse v. Motorola, Inc.,*
  351 Ill.App.3d 67 (1st Dist. 2004) ...................................................................... 15

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) ....................................................................... passim

*Calvin v. Sheriff of Will Cnty.,*
  2004 WL 1125922 (N.D. Ill. 2004) ..................................................................... 14

*Carnegie v. Household Int'l Inc.*,
  376 F.3d 656 (7th Cir. 2004) ........................................................................ 17, 22

*Chavez v. Don Stoltzner Mason Contractor, Inc.*,
  272 F.R.D. 450 (N.D. Ill. 2011) ........................................................................ 12

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
  797 F.3d 426 (7th Cir. 2015) ........................................................................ 8

*Currie v. Chhabra*,
  728 F.3d 626 (7th Cir. 2013) ........................................................................ 9

*De la Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ........................................................................ 9

*Dunn v. City of Chicago*,
  231 F.R.D. 367 (N.D. Ill. 2005) ........................................................................ 7

*Faber v. Ciox Health, LLC*,
  2019 WL 6596501 (6th Cir. 2019) ........................................................................ 21

*Flores v. Lackage*,
  938 F.Supp.2d 759 (N.D. Ill. 2013) ........................................................................ 9

*Hamberger v. Eastman*,
  206 A.2d 239 (N.H. 1964) ........................................................................ 13

*Hudson v. Palmer*,
  468 U.S. 517 (1984) ........................................................................ 8

*In re Discovery Zone Sec. Litig.*,
  169 F.R.D. 104 (N.D. Ill. 1996) ........................................................................ 11

*In re Motorola Sec. Litig.*,
  644 F.3d 511 (7th Cir. 2011) ........................................................................ 2

*In re Nassau Co. Strip Search Cases*,
  742 F.Supp.2d 304 (E.D.N.Y. 2010) ........................................................................ 16

*In re Nassau County Strip Search Cases*,
  461 F.3d 219 (2nd Cir. 2006) ........................................................................ passim

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2nd Cir. 2001) ........................................................................ 20

*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012) ........................................................................ 18

*Johnson v. Phelan*,
    69 F.3d 144 (7th Cir. 1995) ............................................................................ 8

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir.1998) ........................................................................... 7

*Lacy v. Dart*,
    2015 WL 1995576, at *5 (N.D. Ill. 2015) .................................................... 11

*Lawlor v. North American Corp. of Illinois*,
    2012 IL 112530 ............................................................................................. 13

*Lopez v. City of Chicago,*
    464 F.3d 711 (7th Cir. 2006) .......................................................................... 9

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ........................................................................ 18

*McCabe v. Crawford & Co.,*
    210 F.R.D. 631 (N.D. Ill. 2002) ..................................................................... 6

*Messner v. Northshore Univ. Health System*,
    669 F.3d 802 (7th Cir. 2012) ......................................................... 4, 5, 12, 16

*Mitchell v. LVNV Funding, LLC*,
    2015 WL 7016343 (N.D. Ind. 2015) ............................................................ 10

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ............................................................ 16, 19, 20

*Opperman v. Path Inc.*,
    2016 WL 3844326 (N.D. Cal. 2016) ............................................................ 14

*Ortiz v. City of Chicago,*
    656 F.3d 523 (7th Cir. 2011) .......................................................................... 9

*Peckham v. Wisconsin Dept. of Corr.*,
    141 F.3d 694 (7th Cir. 1998) .......................................................................... 9

*Riordan v. Smith Barney,*
    113 F.R.D. 60 (N.D. Ill. 1986) ....................................................................... 5

*Robles v. Corp. Receivables, Inc.*,
    220 F.R.D. 306 (N.D. Ill. 2004) ................................................................... 11

*Rogers v. Khatra Petro, Inc.*,
    No. 2:08-CV-294, 2010 WL 3894100 (N.D. Ind. Sept. 29, 2010) ............... 11

*Rosario v. Livaditis,*
 963 F.2d at 1013 (7th Cir. 1992) .......................................................................... 11

*Streeter v. Sheriff of Cook Cnty.,*
 256 F.R.D. 609 (N.D. Ill. 2009).................................................................... passim

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011)........................................................................................... 8

*Williams v. Rodriguez,*
 509 F.3d 392 (7th Cir. 2007) ............................................................................ 9

*Young v. County of Cook,*
 2007 WL 1238920 (N.D. Ill. 2007) ................................................................. 14

### Statutes

42 U.S.C. § 1983............................................................................................................ 1

### Rules

Fed. R. Civ. P. 23 ................................................................................................. passim

### Treatises

2 Newberg on Class Actions (3d ed. 1992), § 7.22.A .................................................. 6

Rest. (2d) Torts, § 652B....................................................................................... 13, 15

Plaintiffs' Class Action Complaint ("Complaint") brings claims against Defendants COUNTY OF COOK ("Cook County"), and THOMAS J. DART ("Sheriff"), in his official capacity as Sheriff of Cook County (collectively, "Defendants")[1], alleging that Defendants' policy of monitoring and recording arrestees using the toilets in holding cells in Cook County courthouses ("Holding Cells") constitutes an unreasonable search, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, *via* 42 U.S.C. § 1983, and an intrusion upon seclusion. (*See generally* Complaint, Dkt. #1).

## I.    PROCEDURAL BACKGROUND.

On May 6, 2019, Plaintiffs filed their original *Motion for Class Certification* ("Original Motion for Class Certification"). *See* Original Motion for Class Certification, Dkt. #111. On July 24, 2019, the Court entered an order ("July 24, 2019 Order") holding that Plaintiffs' Original Motion for Class Certification met the requirements of Fed. R. Civ. P. 23(a), and the predominance element of Fed. R. Civ. P. 23(b)(3). *See* July 24, 2019 Order, Dkt. # 115. However, the Court ordered the parties to engage in further briefing on Fed. R. Civ. P. 23(b)(3)'s superiority requirement. *Id*.

On October 21, 2019, after the parties provided the Court with supplemental briefing on the superiority issue, the Court entered an order ("October 21, 2019 Order") reflecting the Court's belief that "the most efficient and cost-effective manner of proceeding is to decide the merits issues" in this case prior to ruling on Plaintiffs' Original Motion for Class Certification. *See* October 21, 2019 Order, Dkt. # 130. Accordingly, the October 21, 2019 Order directed the parties to each file a statement "setting forth the issues they believe are properly resolved at this stage and the manner in which they propose doing so." *Id*.

---

[1] Cook County is named as a required party for indemnification purposes, as Plaintiffs are suing the Sheriff of Cook County. *See* Minute Order, Dkt. #60.

On November 20, 2019, the Court entered an order ("November 20, 2019 Order") denying the Original Motion for Class Certification on the grounds that the Class, as it was defined in the Original Motion for Class Certification (the "Original Class Definition"), was overly broad due to differences in the application of the Fourth Amendment to individuals at varying stages in the pre-trial criminal process. *See* November 20, 2019 Order, Dkt. # 133. The Court granted Plaintiffs leave to file a renewed "motion for class certification with a revised proposed class definition" to address this issue. *Id.*

In accordance with the Court's November 20, 2019 Order, this *Second Motion for Class Certification* ("Second Motion for Class Certification") seeks certification of a Class defined as follows:

> All arrestees who used the toilet in one of the Holding Cells identified in Exhibit 12 to this Second Motion for Class Certification prior to appearing at a probable cause hearing since August 8, 2016.

Throughout this Second Motion for Class Certification, Plaintiffs will address the concerns articulated in the Court's November 20, 2019 Order. *Id.* However, as a threshold issue, Plaintiffs note that because the revised Class definition set forth herein is narrower than the one set forth in the Complaint, it is permissible. *E.g.*, *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (permitting a revised class definition that was more narrow than the one defined in the plaintiff's complaint). Indeed, "a district court has the authority to modify a class definition at different stages in litigation" (*In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011)) and may do so "either on motion or on their own initiative." *Beaton*, 907 F.3d at 1023. This is precisely what the Court in this case asked Plaintiffs to do in the November 20, 2019 Order. *See* November 20, 2019 Order, Dkt. # 133. Therefore, the revised Class definition set forth in this Second Motion for Class Certification is appropriate.

## II.    FACTUAL BACKGROUND.

The Sheriff operates Holding Cells in the Cook County courthouses. (*See* Defendants'
Answer to Plaintiffs' Class Action Complaint ("Answer"), Dkt. #39, ¶ 25). Arrestees who are in
the Sheriff's custody, but who have not yet appeared before a judge for probable cause hearings
("Prehearing Arrestees"), are placed in Holding Cells to await their probable cause hearing. (*Id.*,
¶¶ 30, 31). While the exact shape and specifications of Holding Cells vary, the Holding Cells and
toilet partitions are substantially similar. (*Id.*, ¶ 29).

Defendants monitor every Holding Cell, including the toilet area therein, with cameras.
(Answer, ¶¶ 9-10; Deposition of Sheriff's Deputy Patrick Hecker ("Hecker Dep."), attached as
Exhibit 1, 30:8-20).[2]  However, Prehearing Arrestees are not warned or otherwise notified they
are monitored while in the Holding Cells, that both male and female deputies monitor the
Holding Cells in real time, and that the cameras record all activity in the Holding Cells. (Answer,
¶¶ 6, 9, 47, 49). Further, the video of each Holding Cell is recorded and retained for 30 days, and
can be accessed and reviewed by male and female employees anywhere in Cook County. (*Id.*
¶¶ 10, 49).

Prehearing Arrestees are held in the Holding Cells for many hours at a time. (*See e.g.*,
Deposition of Katina Ramos ("Ramos Dep."), attached as Exhibit 2, 32:17-20). As such, they
have to use the toilet located in the Holding Cells. (*See id.*, 41:4-10). In some instances, if a
Prehearing Arrestee is wearing a one-piece jumpsuit, he or she must disrobe to use the toilet.
(*See* Hecker Dep., Ex. 1, 45:12-47:15). While the toilet areas in the Holding Cells have partitions
to give Prehearing Arrestees privacy from other people within the Holding Cell or Sheriff's
deputies looking into the Holding Cell, the Prehearing Arrestees in the toilet areas are exposed to
the cameras in the Holding Cells, which are shown in real-time on monitors in the courthouses,

---

[2] Citations to transcripts are noted as "[page#]:[line#]-[page#]:[line#]."

and can be accessed anywhere in Cook County. (*See* Answer, ¶¶ 4, 49).

Defendants' practice of using cameras to monitor and record Prehearing Arrestees, including their genitals[3], without completely obstructing the toilet area of the Holding Cells is an unjustified invasion of privacy and a violation of their constitutional rights. Defendants do not have any interest in monitoring the toilet areas, because Prehearing Arrestees are searched multiple times before being placed in a holding cell (Answer, ¶¶ 13, 31, 32, 60, 64), and the Sheriff has no security or penological interest in monitoring or recording Prehearing Arrestees using the toilet in Holding Cells.[4] In fact, Defendants placed censor boxes over the toilet area in the video feeds of some cameras that monitor some of the Holding Cells, which demonstrates Defendants' acknowledgement that recording Prehearing Arrestees using the toilet in Holding Cells is entirely unnecessary. (*Id.*, ¶ 11; *see also, e.g.,* screenshot of video from a Maywood Holding Cell, attached as Exhibit 3).

## III.    LEGAL STANDARD.

Class certification is appropriate when the requirements of Rule 23(a) are satisfied, and the requirements of at least one of the subsections of Rule 23(b) are satisfied. *See Messner v. Northshore Univ. Health System*, 669 F.3d 802, 811 (7th Cir. 2012). The requirements for class certification under Rule 23(a) are: (1) the proposed Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims of the representative party are typical of the claims of the Class; and (4) the representative party will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a).

To certify a class under Rule 23(b)(3), a plaintiff must show that "questions of law or fact

---

[3] *See* Hecker Dep., Ex. 1, 43:12-45:7.
[4] *See* Hecker Dep., Ex. 1, 55:15-56:24 (stating that he is not aware of any weapon, contraband, or other security-related incident that occurred by a person using the toilet; Sheriff's deputies could carry out all security duties if a censor box covered the toilet area of the camera feed of the Holding Cells; and there is no security or penological interest in monitoring detainees using the toilet in a given Holding Cell).

common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

At the class certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013). Plaintiffs must show that each requirement for class certification is met by a preponderance of the evidence. *Beaton*, 907 F.3d at 1025; *Messner*, 669 F.3d at 811.

Additionally, Rule 23(c)(4) permits the court to certify a case as a class action "with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Issue certification is proper when common issues predominate only as to certain issues, but the case as a whole does not satisfy Rule 23(b)(3). *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 226-27 (2nd Cir. 2006); *see also Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (stating that courts may certify classes as to liability, and can hold separate hearings on individual damages); *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379-80 (7th Cir. 2015) (same).

## IV. ARGUMENT.

### A. Rule 23(a) Requirements.

#### 1. The Class is Sufficiently Numerous.

To satisfy the numerosity requirement, a Class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "When the Class is large, numbers alone are dispositive." *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the Class numbers at least 40, joinder is generally considered impracticable. A class of forty or more is generally sufficient to establish numerosity. *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609,

612 (N.D. Ill. 2009) (citing *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002)). "[T]he court may assume sufficient numerousness where reasonable to do so in the absence of a contrary showing by defendant . . . . Where the exact size of the Class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 Newberg on Class Actions (3d ed. 1992), § 7.22.A; *Streeter*, 256 F.R.D. at 612.

Here, while the exact number of Class members is unknown, the proposed Class consists of tens of thousands of individuals. Defendants hold thousands of individuals who have been charged with, but not convicted of, a crime in custody, and each one of those individuals was at some point a Prehearing Arrestee. (*See* Complaint, ¶ 91 (quoting Sheriff's website)).  Defendants place hundreds of Prehearing Arrestees in Cook County courthouse Holding Cells each day, and Prehearing Arrestees are held in Holding Cells for many hours until being released or transported to the Cook County Jail. (*See, e.g.*, Deposition of Donald Milazzo ("Milazzo Dep."), 57:18-58:19, attached as Exhibit 4; Deposition of Edward Sadjak ("Sadjak Dep."), attached as Exhibit 5, 89:16-91:6; Deposition of Eric Mills ("Mills Dep."), attached as Exhibit 6, 101:13-102:14; Deposition of Michelle Urrutia ("Urrutia Dep."), attached as Exhibit 7, 37:17-21; Deposition of Elizabeth Alicea ("Alicea Dep."), attached as Exhibit 8, 32:6-9, 44:9-21; Ramos Dep., Ex. 2, 32:17-20).

Further, during discovery Defendants produced a document that contains the names of the more than 16,500 pre-trial detainees—who were all, at some point, Prehearing Arrestees—who had a court hearing in August 2016, including each individual's booking number, the name of the courthouse and courtroom number where the individual was required to appear, and the date and time of each court appearance. (*See* list of August 2016 pretrial detainees ("List of Detainees"), Dkt. #92-1; Defendants' Response to Plaintiffs' Motion to Compel and for

Miscellaneous Relief, Dkt. #81, pg. 5 (stating that the List of Detainees contains over 16,500 names)).

Thus, while the exact size of the Class is presently unknown, general knowledge and common sense dictate that the Class is so numerous that individual joinder is impracticable. *Streeter*, 256 F.R.D. at 612 ("The Court may rely on common sense assumptions or reasonable inferences when ascertaining the size of the class."). As such, numerosity is satisfied.

### 2. Questions of Law or Fact Exist that are Common to the Class.

Rule 23(a)'s second requirement is that there must be "questions of law or fact common to the Class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998). Importantly, "the presence of some factual variation among class members' experiences will not defeat class certification," and Plaintiffs only need to "show that there is at least one question of fact common to the class to satisfy the commonality requirement." *Dunn v. City of Chicago*, 231 F.R.D. 367, 372 (N.D. Ill. 2005) (internal citations omitted).

Generally, a constitutional challenge to a governmental policy or practice that affects all Class members satisfies the commonality requirement. *See Streeter*, 256 F.R.D. at 612 (finding commonality and certifying a class of detainees alleging violations of Fourth and Fourteenth Amendment rights when they were unreasonably strip searched upon entry to the Cook County jail pursuant to jail policy). Similarly, here, common questions of fact and law exist, including:

> a. Whether the Sheriff has a policy or practice of recording Prehearing Arrestees while they are using the toilet in Cook County courthouse Holding Cells;
>
> b. Whether Prehearing Arrestees have a right of privacy when using the toilet in Cook County courthouse Holding Cells;
>
> c. Whether the Sheriff's recording of a Prehearing Arrestee using a toilet in a Holding Cell constitutes an unreasonable search;

  d.  Whether the Sheriff's recording of a Prehearing Arrestee using a toilet in a Holding Cell constitutes an intrusion upon seclusion;

  e.  Whether being recorded using the toilet is objectively offensive and objectionable to a reasonable person; and

  f.  Whether the Sheriff violated the Class members' right of privacy.

The truth or falsity of these common factual issues are threshold issues that are "central to the validity of each one of the claims [that can be resolved] in one stroke." *Bell*, 800 F.3d at 374 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). For example, the common question of whether Defendants' use of the cameras to record Prehearing Arrestees using the toilets in Holding Cells is an unreasonable search "is a single, central, common issue of liability," that warrants class treatment. *See Butler*, 727 F.3d at 801 (7th Cir. 2013).[5]

Finally, it should be noted that, in contrast to the Original Class Definition, the Class defined herein is limited to Prehearing Arrestees. Even assuming, *arguendo*, that the Seventh Circuit's holding in *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995) established a "categorical prohibition on Fourth Amendment claims [by] convicted prisoners and pretrial detainees," it is clear that *Johnson* does not apply to "arrestees awaiting a probable-cause hearing."[6] *Adair v.*

---

[5] Plaintiffs believe a Rule 23(b)(3) Class can and should be certified; however, the Court can certify any one or more of these common liability questions to be resolved on a classwide basis. *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 445 (7th Cir. 2015) ("Rule 23(c)(4) permits the court to certify particular issues for resolution as a class action."). *See also In re Nassau County Strip Search Cases*, 461 F.3d at 226-27. The outline as to how the Court could do so is set forth in *Plaintiffs' Supplemental Brief in Support of the Motion for Class Certification, Pursuant to the Court's July 24, 2019 Order* ("Plaintiffs' Manageability Supplement"). *See generally*, Plaintiffs' Manageability Supplement, Dkt. # 116.

[6] Taking heed of the Court's November 20, 2019 Order, Plaintiffs have chosen to limit the scope of the Class to Prehearing Arrestees. However, Plaintiffs disagree with the *Adair* court's characterization of *Johnson*, as the *Johnson* court's refusal to distinguish between convicted prisoners and pretrial detainees came in the context of pretrial detainees' challenge to conditions of confinement *in prison*. *Johnson*, 69 F.3d at 146 (relying on *Hudson v. Palmer*, 468 U.S. 517, 526-30 (1984) for the proposition that "privacy is the thing most surely extinguished by a judgment committing someone *to prison*"); *Hudson*, 468 U.S. at 526 ("The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the *prison cell*.") (emphasis added to both). Moreover, other courts have expressed doubt as to the expansiveness of the holding in *Johnson*. *E.g.*, *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 615 (W.D. Wis. 2003) (observing that *Johnson* does "not hold that inmates do not have a constitutional

*Town of Cicero*, 2018 WL 5112949, at *2 (N.D. Ill. 2018). As such, Prehearing Arrestees "are still protected by the Fourth Amendment." *Id*; *Ortiz v. City of Chicago*, 656 F.3d 523, 538 (7th Cir. 2011) ("We have long held that the Fourth Amendment protects a person's rights until she has had a probable cause hearing."); *Flores v. Lackage*, 938 F.Supp.2d 759, 775 (N.D. Ill. 2013) ("The Fourth Amendment governs the conditions of detention for arrestees from arrest until a probable cause hearing.") (citing *Lopez v. City of Chicago,* 464 F.3d 711, 719 (7th Cir. 2006), and *Williams v. Rodriguez,* 509 F.3d 392, 403 (7th Cir. 2007)); *see also Currie v. Chhabra*, 728 F.3d 626, 631 (7th Cir. 2013) ("The relevant legal standard for arrestees who have been seized but who have not yet had their probable cause hearing, we conclude, comes from the Fourth Amendment.").

Since all members of the Class defined herein were afforded the same Fourth Amendment protections, the questions of law relative to each of their claims are identical. Therefore, commonality is satisfied.

### 3. Plaintiffs' Claims Are Typical of the Class.

The typicality element of Rule 23(a)(3) is satisfied when the claims of the representative plaintiff "arise[] from the same . . . practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *De la Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The typicality requirement may be satisfied even if there are factual differences between class members' claims, so long as those claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Mitchell v.*

---

right not to be seen nude") (internal quotations and alterations omitted); *Peckham v. Wisconsin Dept. of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998) ("So, does a prison inmate enjoy any protection at all under the Fourth Amendment against unreasonable searches and seizures? Although we acknowledge the tension between *Johnson* and *Canedy*, we think the answer is 'yes.'").

*LVNV Funding, LLC*, 2015 WL 7016343, at *7 (N.D. Ind. 2015). Typicality exists even if there are factual differences in precisely how a policy or practice was applied to each Class member. *Streeter*, 256 F.R.D. at 612-13 (finding typicality despite the Sheriff's argument that there were differences in detainees' criminal histories and whether the detainees felt that the search was too intrusive, because some variation did not undermine the fact that the claims of each class member shared a common factual basis and legal theory).

In this case, Plaintiffs' claims are typical because they arise from a generally applicable policy or practice affecting all Class members—Defendants' use of cameras to record Prehearing Arrestees using the toilet in Holding Cells. Plaintiffs and each Class member were Prehearing Arrestees, held in a Cook County courthouse Holding Cell, and recorded by Defendants when they were using the toilet in a Holding Cell. (*See* Complaint, Dkt. #1, ¶¶ 30-32, 45-47, 82-89).[7] Plaintiffs' claims are based on Defendants' uniform conduct of recording Prehearing Arrestees, including their genitalia, when they used the toilet in a Holding Cell.

Additionally, as Prehearing Arrestees, Plaintiffs and Class members were afforded the same Fourth Amendment protections. *See* Section IV-A-2, *supra* (citing, *inter alia*, *Adair*, 2018 WL 5112949 at *2). Therefore, Plaintiffs' claims are typical of the Class members' claims as they arise out of the same conduct and practice which violated their Fourth Amendment rights.

### 4. Plaintiffs Will Fairly and Adequately Represent the Class.

Rule 23(a)(4) requires that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy Rule 23(a)(4), a plaintiff must demonstrate that: (1) the representative does not have conflicting or antagonistic interests

---

[7] *See also*, Alicea Dep., Ex. 8, 23:21-24:2 (stating that she used the toilet in the Holding Cells she was placed in); Ramos Dep., Ex. 2, 41:1-10 (same); Artinian Dep., Ex. 9, 37:3-5 (same); Urrutia Dep., Ex. 7, 39:10-12 (same); *cf.* Exhibit A to Alicea Exhibit 1, attached as Exhibit 10 (the photograph identified by Alicea depicting the Holding Cell that she was placed in at the Skokie Courthouse).

compared with the class as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Buroff v. Gladieux*, No. 1:17-CV-124-TLS, 2018 WL 2277093, at \*5 (N.D. Ind. May 17, 2018) (internal quotations omitted)). A class representative must "understand the basic facts underlying [their] claims" as evidenced by knowledge of the case, "and participation in discovery." *Robles v. Corp. Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004) (quoting *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996)). "However, the burden of demonstrating the class representative's adequacy is not heavy." *Lacy v. Dart*, 2015 WL 1995576, at \*5 (N.D. Ill. 2015).

Here, Plaintiffs understand the obligations of being Class representatives, the nature of the claims that are involved in the litigation, and they have an interest in representing the Class.[8] Given the identity of claims between Plaintiffs and the Class members, there is no potential for conflicting interests, and there is no antagonism between the interests of Plaintiffs and the Class. As such, Plaintiffs are adequate representatives of the Class.

Additionally, Plaintiffs' counsel are adequate. The Court already held that Plaintiffs' counsel are adequate, knowledgeable, and experienced, when it appointed them as Interim Class Counsel. *See* Motion for the Appointment of Interim Class Counsel, Dkt. #11; Notification of Docket Entry, Dkt. #20. As such, the adequately requirement is satisfied.

**B.    Rule 23(b)(3) Factors.**

As stated above, to certify a Class under Rule 23(b)(3), Plaintiffs must demonstrate the predominance and superiority requirements are satisfied. In evaluating the predominance and superiority requirements, the Court may take into account: (a) class members' interests in

---

[8] *See generally* Alicea Dep., Ex. 8, 59:18-22; Urrutia Dep., Ex. 7, 31:4-22, 42:10-12; Artinian Dep., Ex. 9, 15:5-12; Ramos Dep., Ex. 2, 25:3-11.

individually controlling the action; (b) whether any litigation concerning the controversy has already been filed; (c) the desirability litigating the claims in the particular forum; and (d) any difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

### 1.  Common Questions of Law or Fact Predominate.

The first Rule 23(b)(3) factor is that common questions of law or fact predominate over any individual questions. Fed. R. Civ. P. 23(b)(3). Common issues predominate if class members will rely upon the same type of evidence to prove their claims, and the issue can be resolved for all class members in a single adjudication. *Messner*, 669 F.3d at 815 (quoting *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 228 ("common issues can predominate if a 'common nucleus of operative facts and issues' underlies the claims")). In contrast, individual issues predominate when each class member will rely upon different evidence to prove their claims. *Messner*, 669 F.3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). Importantly, "individual questions need not be absent" to satisfy predominance, as "Rule 23(b)(3) itself contemplates that such individual questions will be present," and "requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815; *Arreola v. Godinez*, 546 F.3d 788, 800 (7th Cir. 2008).

Generally, the existence of a common issue of liability is sufficient to establish predominance because its resolution is a legal predicate to engaging in individualized inquiries— *i.e.*, if the class loses on the common issue of liability, then there is no need to reach individualized questions. *E.g.*, *Butler*, 727 F.3d at 801; *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 455 (N.D. Ill. 2011) ("A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."); *Bell*, 800 F.3d at 379 ("A failure of proof on the common question . . . ends the litigation and thus will never cause individual questions…to overwhelm questions

common to the class." (quoting *Amgen*, 133 S.Ct. at 1196) (emphasis and alterations omitted)). As such, class treatment is warranted when "there is a single, central, common issue of liability," notwithstanding the existence of any potential individualized issues of class membership or damages that must be determined later. *Butler*, 727 F.3d at 801; *Bell*, 800 F.3d at 379-80.

Here, the issue of Defendants' liability relative Plaintiffs' and Class members' constitutional claims can be resolved on a classwide basis because those claims arise from Defendants' uniform practice of *recording* the toilet area of the Holding Cells, and do not depend upon Prehearing Arrestees' individual circumstances. Although the Court expressed concern "with respect to differences in how video monitoring policies are implemented in the various courthouses" in the November 20, 2019 Order, it is undisputed that Defendants use video cameras to record Prehearing Arrestees in every Holding Cell, and as evidenced by the photos in Exhibit 12, the video cameras in several of those Holding Cells record the toilet area used by Prehearing Arrestees. *See* Answer, ¶¶ 9-10; Hecker Dep., Ex. 1, 30:8-20; Holding Cell photos, Ex. 12. Since the mere *recording* of Prehearing Arrestees constitutes an invasion of privacy and a violation of their uniformly applied Fourth Amendment rights, any differences in the implementation of Defendants' video monitoring policy across Cook County courthouses are immaterial to this case. *See e.g.*, *Amati v. City of Woodstock, Ill.*, 829 F.Supp. 998, 1009-1011 (N.D. Ill. 1993) (holding that, under Section 652B of the Second Restatement of Torts ("Restatement"), the mere *recordation* of a private activity constitutes intrusion upon seclusion, and does *not require* that "someone actually hear or listen to the recorded information.") (citing Rest. (2d) Torts, § 652B) (emphasis added);[9] *Arnzen v. Palmer*, 713 F.3d 369, 373 (8th Cir.

---

[9] The *Amati* court also relied on *Hamberger v. Eastman*, 206 A.2d 239 (N.H. 1964), which first held that the tort of intrusion upon seclusion does not require anyone to actually listen to or view a recording. *Id.* at 1010. *Hamberger* was cited with approval when the Illinois Supreme Court officially recognized the tort of intrusion upon seclusion in *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 34, fn.5.

2013) (By capturing images of individuals[10] while they occupy bathrooms, defendants violated their reasonable expectation of privacy, thus conducting a search under the Fourth Amendment, irrespective of whether there is some chance that those images will not be viewed.).

Accordingly, the issues of liability in this case are similar to those present in *Streeter*, where Judge Ruben Castillo held:

> Plaintiffs allege that the Sheriff had a uniform practice that applied to all male inmates returning from court regardless of their individual circumstances. *See Streeter*, 576 F.Supp.2d at 916–17. Plaintiffs' claims turn on the uniform manner in which the group strip searches were conducted, and this question predominates over any individual issues. *See Calvin*, 2004 WL 1125922, at *4 ("[T]he ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry...."); [*Young v. County of Cook*, 2007 WL 1238920, at *8 (N.D. Ill. 2007)] (finding the uniform strip search practice predominated over individual issues); [*Bullock v. Sheahan*, 225 F.R.D. 227, 230 (N.D. Ill 2004)] (finding predominance satisfied where primary issue was whether the sheriff violated inmates' rights under the strip search policy). Accordingly, this Court finds that the predominance requirement is satisfied.

*Streeter*, 256 F.R.D. at 614.[11]

There is also no need to analyze an individual Prehearing Arrestee's *subjective* expectation of privacy, as Plaintiffs' and Class members' intrusion upon seclusion claims are governed by an *objective* "reasonable person" inquiry. *See Opperman v. Path Inc.*, 2016 WL 3844326, *11 (N.D. Cal. 2016) (finding that common issues predominate for the intrusion upon

---

[10] The individuals at issue in *Arnzen* were "involuntarily civilly committed persons" who "retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Id.* at 372. Although there is some dispute over the Fourth Amendment rights applicable to all types of pretrial detainees, there should be no dispute that Prehearing Arrestees are entitled to full Fourth Amendment protection. *See* Section IV-A-2, *supra* (citing, *inter alia*, *Adair*, 2018 WL 5112949 at *2).

[11] *See also*, *Calvin v. Sheriff of Will Cnty.*, 2004 WL 1125922, at *4 (N.D. Ill. 2004) ("the ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry, thus depriving those individuals of their Fourth and Fourteenth Amendment rights. The question of the validity of the Sheriff's policy thus predominates over any 'individualized questions.") (citation omitted).

seclusion claim, and certifying the class, because there is no subjective element to the claim).[12] Accordingly, Defendants' liability does not depend upon Plaintiffs' and Class members' individual circumstances or subjective beliefs.

Moreover, the common questions above—such as whether Defendants have a common policy or practice of recording Prehearing Arrestees using the toilets in the Holding Cells, whether that policy and practice constitutes an unreasonable search or intrusion upon seclusion, and whether Defendants' conduct is objectively offensive to a reasonable person—can be resolved using evidence common to the Class. This evidence includes Defendants placing the cameras so that Prehearing Arrestees cannot see where the cameras are pointed (Hecker Dep., Ex. 1, 43:7-11; Alicea Dep., Ex. 8, 42:2-17), Defendants' failure to warn Prehearing Arrestees they are monitored and recorded when using the toilet (Hecker Dep., Ex. 1, 42:19-43:6; Answer, ¶9), and the decision to not use censor boxes in the camera feeds (Answer, ¶11). All of these issues of liability can be decided for the entire Class in a single adjudication using the same evidence.

Damages relative to Plaintiffs' and Class members' claims can be also determined on a classwide basis. *See* Plaintiffs' Manageability Supplement, Section II-B. For example, in *In re Nassau Co. Strip Search Cases*, Case No. 99-cv-2844, 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008), the court held that it could determine a classwide basis for damages for each unlawful strip search performed by the defendants. *Id.* at *6-7; *see also In re Nassau Co. Strip Search*

---

[12] The intrusion upon seclusion claim in *Opperman* is based on § 652B of the Restatement for intrusion upon seclusion. *See id.* (citing *Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 489-90 (Cal. 1998). Illinois also follows § 652B of the Restatement. *See Lawlor*, 2012 IL 112530, ¶ 33 (quoting Rest. (2d) Torts, § 652B). *See also*, *Webb v. CBS Broadcasting, Inc.*, No. 08 C 6241, 2009 WL 1285836, *3 (N.D. Ill. May 7, 2009) (defining the elements of intrusion upon seclusion to be (1) whether the plaintiff was "in a place that a reasonable person would believe is secluded, (2) the intrusion was highly offensive to a reasonable person, (3) the matters intruded upon were 'private,'" and (4) the intrusion caused the plaintiff 'anguish and suffering.'") (quoting *Busse v. Motorola, Inc.*, 351 Ill.App.3d 67, 71 (1st Dist. 2004)).

*Cases*, 742 F.Supp.2d 304, 326-331 (E.D.N.Y. 2010) (awarding, after a bench trial, $500 in damages per class member per illegal strip search). To the extent that the amount of Class members' damages present individualized issues, Plaintiffs' Manageability Supplement sets forth several ways in which the Court can assure that those individualized issues do not predominate over the common issues of liability in this case. *See* Plaintiffs' Manageability Supplement, Sections III and IV. In any event, variations in damages are not sufficient to deny certification. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("the need for individual determinations at [a] later stage of the litigation does not itself justify the denial of certification"); *Messner*, 669 F.3d at 815 (stating that individual damages do not defeat predominance) (collecting cases); *Butler*, 727 F.3d at 800 (holding that the court may bifurcate certification of liability and damages).

Finally, in light of the changes to the Original Class Definition set forth in this Second Motion for Class Certification, individualized issues pertaining to the applicability of the Fourth Amendment to Class members' claims and their expectations of privacy have been eliminated. *See* Section IV-A-2, *supra* (citing, *inter alia*, *Adair*, 2018 WL 5112949 at *2). Similarly, questions of Class membership do not predominate over these common issues. *See*, Section, IV-B-3. Class membership can be determined relatively simply because the dates and courtrooms of each Prehearing Arrestee's court appearances are contained in Defendants' records,[13] court records, and other entity's records,[14] and Prehearing Arrestees can easily certify that they used the toilet in the Holding Cells.[15] As such, predominance is satisfied.

---

[13] *See e.g.*, Sadjak Dep., Ex. 5, 62:5-63:4 (testifying that Defendants' CCOMS system tracks every person who is in Defendants' custody, including when they are brought to court or back to the DOC).

[14] *See* Sadjak Dep., Ex. 5, 38:10-42:11 (stating that the Chicago Police and the DOC retain records related to date of the arrest and transportation of the individual to Cook County courthouses).

[15] *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669-71 (7th Cir. 2015) (holding that class members may submit self-identifying affidavits); *Beaton*, 907 F.3d at 1025 (same).

Regardless, even if the Court believes that certain individual issues predominate, then, under Rule 23(c)(4), the Court can certify the following issues: (1) whether Defendants' use of cameras to record Prehearing Arrestees using the toilet in Holding Cells constitutes an unreasonable search; and (2) whether Defendants' use of cameras to record Prehearing Arrestees using the toilet in Holding Cells is an invasion of privacy. The precise ways in which the Court could do so are set forth in Plaintiffs' Manageability Supplement, and are incorporated by reference here. Accordingly, Class certification is appropriate.

### 2. A Class Action is the Superior Method of Adjudicating the Claims.

A class action is the superior—and only realistic—means to fairly and efficiently adjudicate this matter. Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy." "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. *See Streeter*, 256 F.R.D. at 614-15 (finding a class action was superior to individual cases regarding the Sheriff's strip search policy).

Further, a class action is superior to thousands of individual cases because the common issues can be decided in a single adjudication, instead of thousands of individual actions which may result inconsistent judgment. Additionally, Class members have little interest individually controlling a separate action. Until Plaintiffs initiated this action, Class members were not aware

that Defendants recorded them using the toilet. After this case was filed, no other Class members were willing to subject themselves to the burdens of bringing an individual lawsuit, and no other action has been brought against Defendants regarding the claims in this action. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-45 (7th Cir. 1997) (stating that for a person to bring an individual lawsuit, they must be "aware of [their] rights, willing to subject herself to all the burdens of suing, and able to find an attorney willing to take [the] case.").

A class action is also superior to individual cases because it conserves judicial resources. Due to the nature of the claims, any action regarding the claims at issue would be brought in this forum. As such, a class action can resolve the issues, instead of overburdening the court with thousands of nearly identical cases.

Finally, manageability is not a significant concern in this case. As set forth in Plaintiffs' Manageability Supplement, there are several manageable ways in which the Court can proceed if the Class is certified. *See generally*, Plaintiffs' Manageability Supplement. As noted above and in Plaintiffs' Manageability Supplement, Class members can be readily identified by Defendants' records, court records, and other entity's records. Damages can also be determined on a classwide basis (*See e.g.*, *In re Nassau Co. Strip Search Cases*, 742 F.Supp.2d at 326-331) or, if necessary, through the use of a Special Master (*See* Plaintiffs' Manageability Supplement, Section IV-A).[16] Therefore, there are no serious manageability concerns in this case.

### 3.    The Class is Ascertainable and Identifiable.

A class is identifiable if class membership can be determined by reference to objective criteria. *Buroff*, 2018 WL 2277093, at *3 (N.D. Ind. May 17, 2018) (citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012)). Courts focus on the class definition

---

[16] Alternatively, as set forth in Section IV-B of Plaintiffs' Manageability Supplement, the Court can decertify the Class after a determination of liability and general damages.

itself when addressing ascertainability. *Mullins*, 795 F.3d at 659-60. Here, the Class definition is clearly and objectively defined, and Class membership can easily be determined.

Defendants' records list the names of Class members who, while in Defendants' custody, were required to appear in one of the six Cook County courthouses, including the date and time of the Class member's court appearance, the courthouse and courtroom where the Class member hearing was held, and the name and booking number for each Class member. (*See* List of Prehearing Arrestees, Dkt. #92-1).[17] Defendants and other entities have records of every Prehearing Arrestee who was held in a Holding Cell while in the custody of the IDOC, an outside agency, or another county.[18] Defendants' employees testified that Prehearing Arrestees are usually held in particular Holding Cells in each courthouse.[19] As such, Defendants' records will show when each Class member was held in a Holding Cell during the Class period, and these records can be used to identify and notify Class members.

Further, individual Class members can affirm or identify which Holding Cell he or she was held in before appearing at a probable cause hearing. *See Mullins*, 795 F.3d at 669-71; *Beaton*, 907 F.3d at 1030.[20] Class members can also attest whether they used the toilet in the Holding Cell prior to attending their respective probable cause hearings. *See id.* Potential Class members' actual membership in the Class will be confirmed using the methods set forth in Plaintiffs' Manageability Supplement. *See* Plaintiffs' Manageability Supplement, Section III.

Regardless, any manageability issues or burdens imposed due to the size of the Class are

---

[17] *See also*, Answer to Interrogatory No. 13, *Defendants' Amended Answers to Plaintiffs' Interrogatories Nos. 2, 11, 13 and 14*, attached as Exhibit 11 (stating that Defendants maintain records that include the names of Prehearing Arrestees, and the courthouse, courtroom, and date of court appearances).

[18] *See, e.g.*, Sadjak Dep., Ex. 5, 38:10-42:11 (stating that the Chicago Police and the DOC retain records related to date of the arrest and transportation of the individual to Cook County courthouses).

[19] *See id.*

[20] *See, e.g.*, Alicea Dep., Ex. 8, 36:1-37:21 (describing the Holding Cell that she was in at the Skokie Courthouse and identifying photograph of same); Ramos Dep., Ex. 2, 24:11-24, 40:7-15 (testifying that she could identify the Holding Cells that she was in if she could look at photographs of the Holding Cells); Urrutia Dep., Ex. 7, 37:22-38:13 (same); Artinian Dep., Ex. 9, 35:1-19 (same).

not sufficient grounds to deny certification. *See Mullins*, 795 F.3d at 663 (stating that there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns.") (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2nd Cir. 2001) (Sotomayor, J.)). Therefore, certification is proper.

### C.    Class Certification Should Be Decided Prior to a Ruling on the Merits.

Although this Court's November 20, 2019 Order expresses concerns as to the merits of Plaintiffs' claims, the issue of class certification should be decided prior to a determination on the merits. For the reasons set forth in briefing on Plaintiffs' Original Motion for Class Certification, Plaintiffs' Manageability Supplement, and this Second Motion for Class Certification, this case involves common questions of liability and damages that are amenable to classwide resolution.   In fact, the Court previously determined that many of Rule 23's requirements were satisfied.  *See* July 24, 2019 Order.  While the Court revised its prior ruling on the Original Motion for Class Certification due to the breadth of the Original Class Definition, the Class defined herein eliminates that issue.  *See* Section IV-A-2, *supra* (citing, *inter alia*, *Adair*, 2018 WL 5112949 at *2).  Therefore, class certification is appropriate.

Moreover, as set forth in *Plaintiffs' Statement Pursuant to the Court's October 21, 2019 Order*, many, if not all, of the merits issues in the case cannot be decided on summary judgment. *See* Dkt. # 131.  This is particularly true because, unlike before, Plaintiffs and Class members were entitled to full Fourth Amendment protection while they were Prehearing Arrestees, meaning that the merits of their claims are significantly stronger than they were when the proposed Class consisted of pretrial detainees who were (arguably) not subject to those same Fourth Amendment protections.  *See* Section IV-A-2, *supra*.  Since this case is likely going to proceed to trial, it would be most efficient to try Plaintiffs' and Class members' claims in one proceeding, as opposed to having a two separate trials before and after class certification—*i.e.*,

20

one before certification and one after certification.

The recent decision in *Faber v. Ciox Health, LLC*, 2019 WL 6596501 (6th Cir. Dec. 5, 2019), should also help to allay the Court's concerns regarding providing notice to Class members. In *Faber*, the district court certified a class, but, before sending notice to the class, granted summary judgment in favor of the defendant. *Faber*, 2019 WL 6596501 at \*2. On appeal, the Sixth Circuit determined that the *Faber* court's ruling on summary judgment did not apply to absent class members because notice of class certification was never issued. *Id.* at \*7.

In light of the foregoing, Plaintiffs believe that it would be most practicable for the Court to certify the Class, and then decide merits issues *prior* to sending notice to Class members. This way, the Court can hold a single trial as to merits issues—which would promote efficiency—without concern as to "the amount of money and effort that will be expended in providing class notice." *See* November 20, 2019 Order. If Plaintiffs prevail, the class notice process would then be completed so that Class members can join or opt-out of the judgment.[21] If Defendants prevail, there is no detriment to Class members because they would not be barred from bringing claims individually, if they choose to do so in the future. *Faber*, 2019 WL 6596501 at \*7.

In contrast, if this case proceeded to a merits determination prior to class certification, and Plaintiffs were to prevail, it would raise unprecedented questions as to how to apply that judgment to absent Class members. This is particularly true in light of the fact that only the named Plaintiffs' claims would be resolved at trial, meaning that issues of fact with respect to Holding Cells in which Class members, but not Plaintiffs, were held would remain.

This proposed case management plan may also lead to a resolution prior to a trial, which would "eliminate all the thorny issues that the court would have to resolve if the parties fought

---

[21] The particulars of the notice plan and the claim-in process are set forth in Plaintiffs' Manageability Supplement, and are incorporated by reference here. *See* Plaintiffs' Manageability Supplement, Section III.

out the case." *Carnegie*, 376 F.3d at 660 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). As such, the Court should certify the Class and then make determination on the merits prior to sending notice to Class members.[22]

## V.  CONCLUSION.

For the foregoing reasons, Plaintiffs ELIZABETH ALICEA, MICHELLE URRUTIA, KATINA RAMOS, and JACK ARTINIAN, request that this Court enter an Order: (1) certifying the Class as requested herein; (2) appointing Plaintiffs as Class Representatives; (3) appointing Thomas A. Zimmerman, Jr., Sharon A. Harris, and Matthew C. De Re as Class Counsel; and (4) for any other relief that the Court deems just and appropriate.

Plaintiffs ELIZABETH ALICEA, MICHELLE URRUTIA, KATINA RAMOS, and JACK ARTINIAN, individually, and on behalf of all others similarly situated,

By:  /s/Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (IL #6231944)
Sharon A. Harris (IL #6255704)
Matthew C. De Re (IL #6317913)
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
www.attorneyzim.com

Counsel for Plaintiffs and the Class

---

[22] If the Court does not believe that this proposal is adequate, then it can utilize the notice and claim-in procedures set forth in Plaintiffs' Manageability Supplement. *See* Plaintiffs' Manageability Supplement, Section III.

## <u>CERTIFICATE OF SERVICE</u>

Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he caused the above and foregoing *Plaintiffs' Second Motion for Class Certification* to be served upon counsel of record via the court's ECF system, on this day December 13, 2019.


<u>s/ Thomas A. Zimmerman, Jr.</u>