IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH ALICEA, MICHELLE URRUTIA, KATINA RAMOS, and JACK ARTINIAN, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS J. DART, individually, and in his capacity as Sheriff of Cook County et al., <br> Defendants. | No. 18-cv-05381 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

The Cook County Sheriff's office uses a video surveillance system to oversee the Cook County Department of Corrections, Cook County courthouses, and other County or Sheriff's Office-operated facilities. Those cameras also provide surveillance of cells used to hold detainees as they are transported to and from court. Some of those cameras permit surveillance of the toilet area of the detention cells.

Plaintiffs are former pretrial detainees who were held at various times in three Cook County courthouse holding cells. Plaintiffs allege that, by allowing surveillance of bathroom areas, the Sheriff's video surveillance system violates Plaintiffs' expectation of privacy in violation of the Fourth Amendment[1] and Illinois state law.

---

[1] Plaintiffs style their Fourth Amendment claim as a Fourth Amendment and Fourteenth Amendment claim. They clarify in their Response to Defendant's Motion for Summary Judgment (Dkt. 172) that the Fourteenth Amendment is the vehicle through which they

In short, Plaintiffs allege that this constant recording and storage of the video, which potentially included Plaintiffs' bathroom use, was and is an unreasonable search.

Defendants Sheriff Thomas Dart and Cook County counter that, because there is no evidence any individual saw any Plaintiff use the bathroom facilities, Plaintiffs have no evidence that they, or anyone else, were searched. But Defendants also contend that, even *if* Sheriff's personnel observed Plaintiffs use the bathroom, the search was reasonable because (1) there is no valid expectation of privacy in the semipublic holding cells; and (2) the searches were minimally invasive and did not outweigh the significant institutional safety and security concerns that the surveillance system was intended to address.

Although the Court respects Plaintiffs' desire to use the bathroom without fear of being watched, Plaintiffs' claims fail as a matter of law. For the reasons explained below, Defendants are entitled to summary judgment on both counts.

I.   BACKGROUND

Defendant Dart operates courthouse holding cells in Cook County, Illinois, which hold detainees before and after they are sent to court. (Dkt. 169 ¶ 7.) The holding cells are arranged in various sizes and configurations, but each contains a toilet which individuals may use when held in the cell. (*Id.* ¶ 8.) A detainee's placement in a particular cell is based on a few factors, including the detainee's sex and the courtroom in which they are to appear. (*Id.* ¶ 9.)

The Sheriff's office places cameras in and around the Cook County Department

---

bring their Fourth Amendment claim (rather than a freestanding Fourteenth Amendment claim). (Dkt. 172 at 6 n.1.)

of Corrections, County courthouses, and other Sheriff's office facilities. (*Id.* ¶ 13.) The stated purpose of those cameras is to enhance security. (*Id.*) To that end, the procedures for requesting, viewing, downloading, storing, and retaining video surveillance footage from the cameras are subject to the Sheriff's Office Video Policy. (*Id.* ¶ 14.) That policy provides that video surveillance will be captured and maintained for 30 days, and if any incidents are captured on video, that the "video should be copied and retained according to established state or federal law." (*Id.* ¶ 15.) The video policy allows recordings to be viewed only by the "Video Monitoring Unit." (*Id.* ¶ 16.) Video monitors in designated locations in the Courthouses allow certain officers to view live video feeds, as needed. (*Id.* ¶ 23.) Videos will only be preserved in certain limited circumstances and may be viewed only if requested by authorized personnel. (*Id.* ¶¶ 18–20.) Improper use of video may result in termination of employment or criminal prosecution. (*Id.* ¶ 21.) The Video Policy explicitly prohibits officers from "viewing an individual's private underclothing, buttock's, genitalia, or female breasts while that individual is showering, performing bodily functions or changing clothes, unless he/she otherwise qualifies for a strip search." (*Id.* ¶ 29.)

In the Skokie courthouse, video monitors displaying the live video feeds can be viewed from two control rooms or the office of Superintendent Eric Mills. (*Id.* ¶ 24.) The video monitors in the Skokie and other courthouses display multiple video feeds (as many as 16) on one monitor at a time. (*Id.* ¶ 26.) Live video feeds from at least six of the over 250 cameras in all courthouses capture some part of the toilet in the cell, including one camera in the Skokie Courthouse, one in the Leighton Courthouse, and

3

one in the Rolling Meadows Courthouse. (*Id.* ¶ 28.)

Plaintiff Elizabeth Alicea was arrested and placed in a holding cell in the Skokie Courthouse in early June 2018. (*Id.* ¶ 31.) That small cell had a bench, toilet, sink, and a privacy wall that separated the toilet area from the rest of the cell but did not extend to the ceiling. (*Id.* ¶ 33.) When Alicea was in the cell, she saw the camera but did not know it could capture the toilet area and did not know whether anyone watched her use the toilet. (*Id.* ¶ 34.)

Plaintiff Michelle Urrutia was held in a holding cell in the Rolling Meadows Courthouse in 2018. (*Id.* ¶ 35.) She too saw cameras when she was in the holding cell but did not know which direction the cameras were angled or if anyone saw her use the toilet. (*Id.* ¶¶ 38–40.)

Plaintiff Katina Ramos was held in a holding cell in the Skokie Courthouse approximately nine times between October 2017 and February 2018. (*Id.* ¶ 41.) She was held in multiple cells, likely on the lower level of the courthouse. (*Id.* ¶ 43.) Each of the cells had a toilet, a partition separating the toilet from the rest of the cell, and a camera. (*Id.* ¶ 44.) Ramos could not say whether anyone viewed her while she used the toilet. (*Id.*)

Plaintiff Jack Artinian was placed in at least one holding cell in the Leighton Criminal Courthouse in April 2017 and twice in the Skokie Courthouse in June and August 2017. (*Id.* ¶¶ 45, 50, 55.) Artinian was aware that there were cameras in each of those cells but was not sure whether they could see him in the toilet areas. (*Id.* ¶¶ 48, 54.) In June, there were other detainees in the holding cell with Artinian. (*Id.*

¶ 51.) Artinian is not sure whether anyone observed him use the toilet. (*Id.* ¶ 48.)

Three of the Plaintiffs, Alicea, Urrutia, and Ramos, claim that they feel embarrassed or humiliated by the potential for someone to have seen them use the toilet in their respective holding cells. (*Id.* ¶¶ 62, 65, 69.) None of the plaintiffs alleges to have seen a doctor or psychiatrist, nor to have made any lifestyle changes because of the potential toilet viewing. (*Id.* ¶¶ 63–64, 66–67, 69–70, 72–73.)

Plaintiffs filed their class action lawsuit on August 8, 2018. (Dkt. 1.) They allege that the video surveillance of pretrial detainees that includes toilets violates the Fourth Amendment. (*Id.* ¶¶ 96–108.) Moreover, the Plaintiffs allege the surveillance is an intrusion on their seclusion under Illinois state law. (*Id.* ¶¶ 109–116.) By the previously-assigned judge, the Court initially opened class certification discovery for a four-month period to close in January 2019 before extending that deadline to March 2019. (Dkt. 21; Dkt. 85.) Then the Court denied class certification twice without prejudice. (Dkt. 133; Dkt. 147.) In June 2020, Defendants moved for summary judgment. (Dkt. 167; Dkt. 172; Dkt. 174.) For the reasons explained below, the Court grants Defendants summary judgment on both counts.

## II.    LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005); *see also*

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable to Plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### III. DISCUSSION

#### A. Fourth Amendment Claim

Until recently, the Seventh Circuit adhered to a bright-line rule that pretrial detainees and prisoners had no Fourth Amendment rights. *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir. 1995) ("The fourth amendment does not protect privacy interests within prisons."), *overruled by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (en banc). But recently, the Seventh Circuit trimmed that categorical rule and held that "the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry*, 969 F.3d at 779. When evaluating a

6

Case: 1:18-cv-05381 Document #: 179 Filed: 09/30/22 Page 7 of 16 PageID #:3257

pretrial detainee or prisoner's Fourth Amendment claim "regarding a strip or body cavity search, courts must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.' " *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). That holding applies to "pretrial detainees and convicted prisoners alike." *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Indeed, "in certain circumstances [pretrial detainees] present a greater risk to jail security and order [than convicted prisoners]." *Id.* (quoting *Bell*, 441 U.S. at 546 n.28).

*Henry* ensured the protections of the Fourth Amendment extended, in limited circumstances, to prisoners and pretrial detainees. "The 'touchstone' of the Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " *Henry*, 969 F.3d at 776–77 (quoting *Oliver v. United States*, 446 U.S. 170, 177 (1984)). The Fourth Amendment only protects reasonable expectations of privacy. *Id.* at 777. "Assessing whether a search violated a person's Fourth Amendment rights 'requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.' " *Id.* (quoting *Bell*, 441 U.S. at 559).

But while *Henry* focused specifically on the privacy interest of detainees in their bodies, it carefully preserved *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994), which affirmed the Supreme Court's holding in *Hudson v. Palmer* that prisoners are entitled "to no reasonable expectation of privacy in their *prison cells* insuring them of Fourth Amendment Protection against unreasonable searches and

7

seizures." *Henry*, 969 F.3d at 782 (emphasis added) (quoting *Canedy*, 16 F.3d at 185). Indeed, *Henry* favorably quoted from *Sparks v. Stutler* that "*Hudson* does not establish that the interior of one's body is as open to invasion as the interior of one's cell." *Id.* (quoting *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995)); *see also Hudson*, 468 U.S. at 526 ("[The] Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").

*Henry* thus instructs district courts to walk a fine line, recognizing that the Fourth Amendment is applicable "to visual inspections during bodily searches" but still granting deference to prison officials to tend to "the ever-present institutional concerns over safety and security." *Henry*, 969 F.3d at 783. When evaluating the reasonableness of "a strip or body cavity search, [therefore,] . . . courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Id.* (quoting *Bell*, 441 U.S. at 547)

There is no evidence that any member of the Sheriff's department (or anyone else) watched the video feeds while any Plaintiff used the toilet. As a result, the Court will first address whether the live video recordings, standing alone, constitute a search. The Seventh Circuit recently addressed whether twenty-four-hour cameras on telephone poles used to record a defendant's home constituted a search. *See United States v. Tuggle*, 4 F.4th 505, 525 (7th Cir. 2021). In *Tuggle*, the court noted that technology such as cameras will "eventually and inevitably permeate society" and will

8

pose a challenge to traditional Fourth Amendment analysis. *Id.* at 527. With some apparent hesitancy, the Court of Appeals concluded that "round–the–clock surveillance for eighteen months" of the defendant's home using pole cameras did not constitute a search in violation of the Fourth Amendment. *Id.* at 528–29. In doing so, the court distinguished the government's use of "real–time video footage" captured by the pole cameras from "an expansive, pre-existing database of video footage." *Id.* at 525.

As in *Tuggle*, the mere fact here of a live video feed, without any evidence of someone watching it, is insufficient to constitute a search. That is particularly true given that there were no corrections officers assigned to watch the monitors, and that the Video Policy explicitly prohibited viewing an individual's "private underclothing, buttock's, genitalia, or female breasts while that individual is showering, performing bodily functions, or changing clothes, unless he/she qualifies for a strip search." (Dkt. 169 ¶¶ 23, 29.) Although the Seventh Circuit has yet to squarely decide whether video recording alone, without any observer, constitutes a search for pretrial detainees, *Tuggle* arguably suggests it does not.[2]

Plaintiffs rely on *Arnzen v. Palmer*, 713 F.3d 369 (8th Cir. 2013), to support their contention that the mere act of recording constitutes a search. (Dkt. 172 at 7.) The *Arnzen* plaintiffs—involuntarily committed sex offenders—sought a preliminary injunction enjoining the state authorities from using unmonitored cameras to record

---

[2] To be sure, the cameras here, which recorded the jail–cell toilets, may have "created a potential for an invasion of privacy." *United States v. Karo*, 468 U.S. 705, 712 (1984). But "potential, as opposed to actual, invasions of privacy [fail to] constitute searches for purposes of the Fourth Amendment." *Id.*

them in single-occupant bathrooms. *Arnzen*, 713 F.3d at 372. Plaintiffs contend that the Eighth Circuit held that " 'capturing images,' in itself, 'violated patients' reasonable expectation of privacy . . . irrespective of whether there is some chance that those images will not be viewed.' " (Dkt. 172 at 8 (quoting *Arnzen*, 713 F.3d at 372–73).) Yet, as Defendants point out, the Eighth Circuit "believe[d] . . . that single-person bathrooms . . . are inherently different from cells" because the former are used for "functions 'traditionally shielded by great privacy.' " *Arnzen*, 713 F.3d at 373 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 658 (1995)). Although the Eighth Circuit held that unviewed recordings may constitute a search, that holding is of less import here when applied to jail cells.

Because there is no authority directly deciding whether unviewed jail-cell recordings constitute a search under the Fourth Amendment, the Court will analyze Plaintiffs' claims operating under the most favorable disposition to Plaintiffs—that regardless of whether anyone watched the video feeds, the feeds themselves constitutes a search.[3] But even making such an assumption, Plaintiffs' Fourth Amendment claim fails on the merits.

Although the Court assumes a search occurred, that "does not mean that Plaintiffs are necessarily entitled to a trial on their Fourth Amendment claim." *Henry*, 969 F.3d at 784. Plaintiffs still must provide evidence that the searches were unreasonable, "considering 'the scope of the particular intrusion[s], the manner in

---

[3] Similarly, the Court will assume without deciding that each Plaintiff occupied a cell from which they could be viewed on the toilet. Only Alicea submitted evidence in support of that contention. (Dkt. 169 ¶ 34.)

10

which [they were] conducted, the justification for initiating [them], and the place in which [they were] conducted.'" *Id.* (alterations in original) (quoting *Bell*, 441 U.S. at 559). A reasonable expectation of privacy "exists when: (1) the claimant exhibits an actual (subjective) expectation of privacy; and (2) the expectation is one that society is prepared to recognize as reasonable." *Doe v. Heck*, 327 F.3d 492, 511 (7th Cir. 2003); *see also Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326, 339 (2012) (recognizing that because the "difficulties of operating a detention center must not be underestimated by the courts," even invasive search procedures "struck a reasonable balance between inmate privacy and the needs of the institutions").

Ultimately, the issue is whether Plaintiffs' privacy interest in question is closer to the physical-cavity strip-search in *Henry* or the general lack of privacy interest in a prison cell. *Henry* elaborated that "body cavity 'searches must be conducted in a reasonable manner.'" 969 F.3d at 782 (quoting *Canedy*, 16 F.3d at 186*). Henry* further recognized that even mere visual body inspections qualify as searches for Fourth Amendment purposes. *Id.* at 783. But in doing so*, Henry* reaffirmed the result in *Johnson*, even though the court backed away from *Johnson*'s categorical rule against finding Fourth Amendment rights in prisons. *Id.* (citing *Johnson*, 69 F.3d at 145). The cross-gender viewing of prisoners in "various states of undress in their prison cells, showers, and toilets" at issue in *Johnson* now constituted a Fourth Amendment search, but the Seventh Circuit found that search reasonable. *Id.* ("We do note, however, that the result in *Johnson* would have been no different under a reasonableness analysis, given the limited nature of the intrusions at issue and the

11

ever-present institutional concerns over safety and security.").

Accordingly, the Court holds that the potential for authorized employees to "routinely and incidentally" view pretrial detainees in "various states of undress in their prison cells, showers, and toilets" is reasonable. *Id*. Plaintiffs admit that they were aware that video cameras were present in their holding cells. (Dkt. 169 ¶¶ 34, 38, 48, 54.) Moreover, an "arrest itself result[s] in a diminished expectation of privacy on the part of the defendants." *United States v. Paxton*, 848 F.3d 803, 811 (7th Cir. 2017); *see Hudson*, 468 U.S. at 526 ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). In *United States v. Paxton*, for example, the Seventh Circuit held that even when "defendants' surroundings"—the inside of a police van partitioned by plexiglass windows—"may have lulled them into assuming, mistakenly, that their discussions could not be overheard," the "security function" of that vehicle put detainees on notice that they may be watched. *Paxton*, 848 F.3d at 811. So too with pretrial detainees placed in a jail cell in which they acknowledge cameras are present. Plaintiffs' lack of a reasonable expectation of privacy in their cells is fatal to their Fourth Amendment claim.

Moreover, even if Plaintiffs had an expectation of privacy, Defendant Dart had "legitimate reasons, wholly consistent with the public interest, for monitoring individuals [he] has taken into [hi]s custody," that justify the intrusion. (Dkt. 168 at

12

10 (quoting *Paxton*, 848 F.3d at 813).) Whether a search is reasonable "depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady v. North Carolina*, 575 U.S. 306, 310 (2015).

Sheriff's Department employees are strictly limited in their ability to view live feeds. (Dkt. 169 ¶ 20.) Employees are limited to certain access levels, which control access to the feeds and provides an audit trail. (*Id.* ¶ 17.) Improper use of video feeds may result in termination or criminal prosecution. (*Id.* ¶ 21.) Indeed, one such limitation is the prohibition against viewing detainees' genitals, if visible, while they are using the toilet. (*Id.* ¶ 29.) The Video Policy more broadly is meant to address emergency incidents as they occur for the benefit of either the Sheriff's staff or detainees in the event corroboration is needed. (*Id.* ¶¶ 19, 23.)

Plaintiffs largely rely on the deposition testimony of Deputy Sheriff Patrick Hecker. (*See, e.g.*, Dkt. 172 at 3.) Hecker testified that he was not aware of a valid security reason to monitor detainees while on the toilet. (*Id.* at 18.) Hecker also testified that he was unaware of any weapon or contraband used by someone on the toilet in a holding cell. (*Id.*) Defendants counter that Hecker has no policy-making authority and no first-hand knowledge of whether any of the Plaintiffs were recorded on the toilet. (Dkt. 174 at 5, 11.)

Although Plaintiffs' concerns, which rely upon Hecker's testimony, are superficially attractive, courts "must accord substantial deference to the professional judgment of prison *administrators*, who bear a significant responsibility for defining

13

the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (emphasis added) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003))." Defendants have implemented valid security measures that redound to the benefit of Sheriff's employees, corrections officers, and (potentially) detainees. Accordingly, even if Plaintiffs enjoyed a right to privacy, Defendants had a legitimate reason to use the video surveillance system. The Court thus grants summary judgment in favor of Defendants on Plaintiffs' Fourth Amendment claim.

### B. Intrusion Upon Seclusion

To prevail on an intrusion upon seclusion claim under Illinois law, Plaintiffs must establish "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Spiegel v. McClintic*, 916 F.3d 611, 618–19 (7th Cir. 2019) (quoting *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004)).

Illinois courts suggest analyzing the third element first, because that is "the predicate for the other elements, and as such, if this element is not proven, th[e] court need not reach the other elements." *Jacobson v. CBS Broadcasting, Inc.*, 19 N.E.3d 1165, 1181 (Ill. App. Ct. 2014). In analyzing the third element, Illinois courts look to the reasonable expectation of privacy in a particular circumstance. *See id.* at 1181. Where courts find a diminished expectation of privacy, a claim of intrusion on

14

seclusion likely fails. *Id.* ("Our analysis in this case begins and ends with the privacy element. We conclude that (1) the plaintiff cannot reasonably be said to have had a legitimate expectation of privacy or seclusion . . . .").

As explained above, prisoners are entitled "to no reasonable expectation of privacy in their prison cells insuring them of Fourth Amendment Protection against unreasonable searches and seizures." *Henry*, 969 F.3d at 782 (quoting *Canedy*, 16 F.3d at 185). Indeed, the "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *See Hudson*, 468 U.S. at 526. Plaintiffs offer no binding precedent establishing a reasonable expectation of privacy in their cells, particularly given their knowledge that cameras were in their cells.[4] As a result, the Court grants summary judgment for Defendants on the Plaintiffs' intrusion upon seclusion claim.

## IV. CONCLUSION

Plaintiffs fail to create a genuine issue of material fact, and their claims fail as a matter of law. Defendants are therefore granted summary judgment on both counts.

---

[4] Plaintiffs also struggle to meet the Fourth element. Indeed, courts in this District have routinely rejected intrusion upon seclusion claims and have granted summary judgment to defendants where plaintiffs have failed to offer any evidence beyond their own testimony. *See Minter v. AAA Cook Cnty. Consol., Inc.*, 2004 WL 1630781, at *7 (N.D. Ill. July 19, 2004) (granting summary judgment to the defendant on an Illinois intrusion upon seclusion claim where "[t]he extent of plaintiff's evidence is her own statement that she felt 'angry, humiliated, frustrated and embarrassed.' This is insufficient as a matter of law"); *see also Messina v. Green Tree Serv., LLC*, 210 F. Supp. 3d 992, 1009 (N.D. Ill. 2016) (granting summary judgment to the defendants on Illinois intrusion upon seclusion claim where plaintiffs "presented no evidence of their alleged anguish and suffering other than their own say-so" and "[m]ore is needed for a plaintiff to prove actual injury").

SO ORDERED in No. 18-cv-05381.

Date: September 30, 2022

JOHN F. KNESS
United States District Judge